**COLEMAN, Appellant,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW et al., Appellees.**

Court of Common Pleas of Ohio,
Franklin County,
Civil Division.

No. 96CVF01–224.

Decided Aug. 26, 1996.

*Robert G. Byrom,* for appellant.

*Joseph J. Zaccaria,* for appellee Administrator, Ohio Bureau of Employment Services.

*Brian D. Hall,* for appellee Anomatic Corporation.

---

JOHN P. BESSEY, Judge.

This case is before the court on an R.C. 4141.28(O) appeal from the decision of the Unemployment Compensation Board of Review denying unemployment compensation to appellant, finding she was terminated from her job at Anomatic Corporation for just cause in connection with work.

■ Coleman was employed by Anomatic as a racker from April 20, 1984 through June 2, 1995. She is the divorced mother of three young children who at the time she was terminated were ages thirteen, nine, and two. The nine year old is attention-deficit hyperactive and attends a special school (St. Vincent's). He is on medication. Coleman lived in Columbus and worked in Newark. Her hours were 6:30 a.m. to 3:00 p.m., requiring her to leave her children between 5:00 and 5:30 a.m. On May 30, 1995, Coleman's babysitter informed her that she would be quitting at the end of that week (June 2, 1995). Originally, she was to have been employed by Coleman through August. Coleman immediately made her employer aware of the situation and put in for vacation for the following week.[1] The employer denied the request because its allotted number of people were already going to be on vacation. Coleman then put in for a leave of absence, citing her emergency with her babysitter.[2] The employer denied her request, stating that it believed she could replace her babysitter during nonwork hours. The employer has a leave of absence policy in effect, which reads as follows:

"A full-time employee with at least 12 months of employment may request a leave of absence for personal or medical reasons. For certain medical reasons, this may be available as a family and medical leave. This is covered below in Section 7. Requests for leave for medical reasons not covered by the FMLA will be evaluated under this section on leaves of absence.

"All factors surrounding a leave of absence request will be considered, with the final decision on approval resting with the Human Resources Manager, in conjunction with the Vice President of Manufacturing. Employees requesting any type of leave of absence should carefully consider the effects the leave may have on the qualifying hours required for paid vacation.

---

1. Previously, on May 8, 1995, she had requested a day's vacation for June 6. That request was approved on May 12.

2. There had been a previous occasion when Coleman had been granted a leave of absence because a previous babysitter had quit.

"The basic purpose of a leave of absence is to give an employee time off to deal with a situation which could not be anticipated. Usually, either the employee does not have vacation time saved for such an emergency or the employee does not have enough eligible vacation time due to the length of time required to be off work. Leaves of absences are not meant for vacations, family reunions, or other activities which are more appropriately covered with vacation time. They are also not meant to give a person with a short illness such as flu, colds, etc., an excessively long amount of time off to avoid incurring points.

"A request for leave of absence must be made in writing and contain complete reasons for the leave of absence request. A leave for non-medical reasons will generally not exceed one month and will be without pay. * * *

"Employees eligible for vacation will be required to exhaust available vacation time before using an [sic] leave of absence other than a medical/injury benefit leave."

Appellant did submit her request for a leave of absence in writing when her vacation was denied.

Coleman was unable to find a new babysitter between the May 30 notice from her babysitter and June 5, 1995. She has no family willing to help, and the early hours and the special-needs child made finding a babysitter especially difficult.

The employer has a "no-fault" absenteeism policy. It provides that employees are expected to work unless they are ill or have an emergency. To ensure that, the employee handbook establishes an "attendance year," which is made up of the current month and the preceding eleven months. For each absence, tardiness, failure to report in, etc., points or fractions thereof are assessed against the employee. Termination occurs when ten points occur within the attendance year or when five points occur within any three consecutive month period or if the employee fails to call in three times in one year. Points can be worked off by perfect attendance during any three-month period. When five and eight points have been accumulated, written warnings are given by the employer and signed by the employee. Appellant did receive those warnings on prior occasions. On May 30, when appellant became aware that she was going to lose her babysitter, she had accumulated seven points during the attendance year, one and one-half for being tardy, one-half for leaving early, and five for being absent.

The employer was aware of the special-needs child because appellant had asked Jim Young, Anomatic's human resources manager, if the child qualified under the Family Medical Leave Act ("FMLA"). He never answered her, indicating that the attorney was not getting back to him with an answer to his inquiry regarding it. She had asked him about it in January or February 1995. When she

requested the leave of absence, she did not mention the FMLA on the request form.

On June 5, 7, and 8, 1995, appellant called her employer to report that she could not come to work because she did not have a babysitter. On the 8th, she acknowledged that she had ten points[3] and assumed she no longer had a job. The employer agreed that she did not. She filed for unemployment compensation on the 9th. Initially, the employer asserted that she had abandoned her job because she did not call in after June 8; however, at the hearing that position was apparently forgone in favor of the idea that the employer had justifiably fired her for excessive absenteeism.

On June 30, 1995, the administrator held that there was no showing of excessive absenteeism, that this situation was not her fault, and the termination was not justified. Benefits were awarded. After the employer requested a reconsideration, the administrator reversed himself on September 8, 1995. Appellant appealed to the Unemployment Compensation Board of Review, which affirmed the administrator's reconsidered opinion and denied benefits based on the fact that there was excessive absenteeism and that the claimant was unavailable to work the week ending June 10 due to not having a babysitter.

 The law requires that an employee have some fault in his or her termination for it to have been done with just cause and before unemployment compensation can be denied. *Tzangas, Plakas, & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207; *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 73 O.O.2d 8, 335 N.E.2d 751. The purpose of the Unemployment Compensation Act is to allow an employee who has been involuntarily unemployed to subsist until he or she can find other employment. *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587. In this case, there is no evidence in the record that appellant did anything wrong other than lose her babysitter unexpectedly. The employer showed no reason why it chose to deny her a leave of absence even though it had previously granted her one for the same reason. In fact, its given rationale—that she could find a babysitter on her own time—makes no sense. The point was, until she did obtain someone to watch her children, she could not come to work.

It is conceivable that the employer could have shown (but did not) that it could no longer afford to deal with her absences production-wise,[4] which would *justify* letting her go. The evidence, herein, does not, however, rise to the level of *just*

---

3. The employer claims she had eleven; however, since the 6th had been previously approved for vacation, only the 5th, 7th and 8th could count against her.

4. Her leave of absence would have been unpaid.

*cause* for termination caused by any fault of hers, and if Anomatic chooses to let her go anyway, it must pay her unemployment. *Tzangas, supra.*

This court declines to hold, unlike the Hamilton County Court of Appeals,[5] that the accumulation of ten points for any reason, with no consideration of the culpability of appellant, will amount to just cause. Rather, the dissenting opinion in *Sutherlin,* with which this court concurs, follows long-standing Supreme Court precedent that fault on the part of the employee must be present for a just-cause termination to be successfully asserted. The totality of the circumstances must be considered. The unreported Franklin County Court of Appeals decision cited by the board and the employer [6] is readily distinguishable in that the claimant in that case had some credibility problems with both his employer and the board. He claimed he was injured in an accident and unable to come to work due to circumstances beyond his control, but he did not immediately seek treatment and did not tell his employer he was seriously injured as he later claimed, and his physicians did not recommend that he not work. Also, in that case, the ten-point no-fault absenteeism was the product of a negotiated union contract; whereas, in this case, appellant was a nonunion hourly worker, and the absenteeism policy appears to be unilateral. The fact that Coleman's babysitter quit with very little notice is not in dispute, nor is the fact that she offered to give up accumulated vacation or take an unpaid leave of absence to remedy the situation.

The hearing examiner found that due to appellant's lack of a babysitter she was unavailable for work within the meaning of R.C. 4141.29 and, for that reason alone, she was not entitled to benefits. However, the evidence presented was that within a few days of being fired, her neighbor told her she was available to babysit. Thus, while the hearing examiner may have been justified in finding that she was unavailable for the week ending June 10, to deny benefits indefinitely because of his questions concerning her availability is not supported by the record, nor was it raised in either the brief or at the hearing by counsel for the administrator.

There is not enough evidence in the record for the court to determine whether or not the actions of the employer violated the FMLA, and it is not necessary to the determination the court makes herein, because the court finds that a reasonably intelligent person would not be able to find just cause for this termination. *Tzangas, supra.*

------

5. *Sutherlin v. Interstate Brands Corp.* (1992), 79 Ohio App.3d 635, 607 N.E.2d 1076.

6. *Kolimackouski v. Admr., Ohio Bur. of Emp. Serv.* (Dec. 12, 1989), Franklin App. No. 89AP–1010, unreported.

Based on the foregoing analysis, the court finds that the decision of the board of review is unreasonable, unlawful, and against the manifest weight of the evidence. It is hereby REVERSED with instructions to begin appellant's unemployment benefits on June 13, 1995.

Counsel for appellant shall prepare and submit an appropriate judgment entry reflecting this decision no later than August 9, 1996.

*Judgment accordingly.*