JOURNAL ENTRY AND OPINION
Claimant-appellant, Scott A. Ruyf, appeals the judgment of the Cuyahoga Court of Common Pleas affirming the decision of the Ohio Unemployment Compensation Review Commission (Review Commission) denying unemployment compensation to appellant. For the reasons that follow, we affirm.
On March 8, 1999, the Ohio Bureau of Employment Services (OBES) issued an initial determination regarding appellant's application for unemployment compensation, finding that appellant quit his employment with Richard Hileman, d/b/a Blast Cleaning, without just cause and, therefore, disallowing unemployment compensation.
On March 12, 1999, appellant appealed this determination and on March 31, 1999, OBES issued a redetermination, finding that appellant was discharged by Blast Cleaning and, therefore, allowing unemployment compensation. On April 1, 1999, OBES vacated its redetermination, however, and on April 12, 1999, OBES issued a revised redetermination affirming its March 8, 1999 determination disallowing unemployment compensation. Accordingly, appellant was required to repay benefits for the weeks ending February 20, 1999 through March 20, 1999, for a total overpayment of $1460.
On April 16, 1999, appellant filed an appeal of this redetermination with OBES, which transferred jurisdiction of appellant's appeal to the Unemployment Compensation Review Commission pursuant to R.C. 4141.28(G).
A hearing regarding appellant's appeal was held on May 26, 1999. Appellant appeared and testified at the hearing, although neither Richard Hileman nor any representative from Blast Cleaning attended.
Appellant testified that he had been employed by Blast Cleaning as a sandblaster and painter for approximately three years. Appellant was the only employee of Blast Cleaning.
According to appellant, he called Richard Hileman, the owner of Blast Cleaning, on Sunday, February 7, 1999, and informed him that he had hurt his knee that day, it was badly swollen and he would not be in to work on Monday. When appellant informed Hileman that he had not seen a doctor for his injury, Hileman told him that he should do so.
Appellant called Hileman again on Monday, February 8, 1999 and told him that he would not be in to work on Tuesday. Appellant testified that he reported for work at 6 o'clock a.m. on Wednesday, February 10, 1999, but there was no work for him to do and Richard Hileman told him to go home. According to appellant, as he went out the door, Hileman also told him, oh, by the way, you need a doctor's release. Appellant testified that he had not seen a doctor regarding his knee prior to returning to work. He filed for unemployment compensation the same day.
Appellant testified further that Richard Hileman's father, Fred Hileman, subsequently called him and asked him why he was not at work. According to appellant, he told Hileman that there was no work for him. Appellant testified further that when Hileman asked him if he had quit, I said, `No.' He laughed and he hung up the phone. That was the last I heard from Blast Cleaning. And they have never called me back.
Appellant testified that he had been laid off in the past from Blast Cleaning. According to appellant, he did not call Blast Cleaning during those layoffs to ask when he would be returning to work. Rather, appellant testified, They always called me back. When they tell me to go home, I go home and I stay home until they call me back to work.
The administrator's file contained a letter dated April 6, 1999 from Richard Hileman to OBES which offered a version of events different from that testified to by appellant at the hearing. Hileman's letter to OBES stated that appellant telephoned him on Sunday, February 7, 1999 and informed him that he had hurt his knee and would not be in to work on Monday. The letter stated further that appellant called Hileman on Monday, February 8, 1999 and told Hileman that he had seen a doctor, who told him that he had torn the cartilage in his knee and had to stay off his leg for at least one week. Consequently, Hileman stated in his letter, he was surprised to see appellant back at work on Wednesday, February 10, 1999. According to the letter, when Hileman asked appellant if he had a release from his doctor allowing him to go back to work, appellant said, no, and then left appearing to be mad and filed for unemployment on the same day.
Richard Hileman's letter to OBES stated further that when his father, Fred Hileman, subsequently called appellant and asked him if he had quit, appellant responded that he had not quit, but had hurt his knee and could not work. Fred Hileman then asked appellant, When your knee is better, will you come back to work? Appellant responded, No, I'm just not going to work there anymore. On June 4, 1999, the Review Commission issued its decision affirming the administrator's redetermination dated April 12, 1999 finding that appellant quit work with Blast Cleaning without just cause. Accordingly, appellant's claim for the week ending February 13, was disallowed and appellant was required to repay benefits received by him for the weeks ending February 20, 1999 through March 20, 1999, a total overpayment in the amount of $1460.
On June 14, 1999, appellant sent a letter to the Review Commission requesting review of the decision of the Review Commission dated June 4, 1999. In his letter, appellant stated that he did not quit his employment with Blast Cleaning — he was sent home because there was no work and was not recalled to work. Appellant also stated that Rick Hileman has a history of `game playing' and I took his request for a doctor's note as yet another one of his games. Significantly, appellant stated further, I was afraid of `not playing the game' or I would be out of a job, which is ultimately what happened. When I told Fred Hileman that I was done, I meant I was done `playing games.'
On August 6, 1999, the Review Commission denied appellant's request for further review.
Pursuant to R.C. 4141.28(O), appellant appealed the decision of the Review Commission to the Cuyahoga Court of Common Pleas. On July 17, 2000, the Common Pleas Court issued a judgment entry affirming the decision of the Review Commission and finding that the decision of the Review Commission was not unlawful, unreasonable or against the manifest weight of the evidence.
Appellant timely appealed, raising one assignment of error:
 THE COURT OF COMMON PLEAS ERRED IN FINDING THAT THE DECISION OF THE OHIO UNEMPLOYMENT COMPENSATION REVIEW COMMISSION WAS NOT UNLAWFUL, UNREASONABLE OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
R.C. 4141.29 provides that an individual shall not be paid unemployment compensation benefits if he quit his work without just cause or has been discharged for just cause in connection with his work * * *. Just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. Tzangas, Plakas Mannos v. Ohio Bur. of Employment Svcs. (1995),73 Ohio St.3d 694, 697, quoting Irvine v. Unemp. Comp. Bd. Of Review (1985), 19 Ohio St.3d 15, 17. The claimant has the burden of proving his entitlement to unemployment compensation benefits, including the existence of just cause for quitting work. Irvine v. Unemployment Compensation Bd. of Review (1985), 19 Ohio St.3d 15, 17.
The law is well-settled that a reviewing court may reverse the Review Commission's determination only if it is unlawful, unreasonable or against the manifest weight of the evidence. Tzangas, supra at 696. Reviewing courts should defer to the Board's findings regarding the determination of purely factual issues, such as the credibility of witnesses and the weight to be given to conflicting evidence. Angelkovski v. Buckeye Potato Chips Co. (1983), 11 Ohio App.3d 159, 161.
Although reviewing courts may not make factual findings or determine the credibility of witnesses, they have the duty of determining whether the Board's decision is supported by the evidence in the record. Tzangas, supra at 696. The court may not reverse the decision of the Board, however, simply because it interprets the evidence differently than did the Board. Angelkovski, supra at 161. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the Board's decision. Tzangas, supra, quoting Irvine,19 Ohio St.3d at 18.
The issue presented by this appeal, therefore, is whether the decision of the Review Commission finding that appellant quit his employment without just cause and, therefore, was not eligible for unemployment compensation is unreasonable, unlawful or against the manifest weight of the evidence. An examination of the record in this case demonstrates that sufficient credible evidence supports the finding of the Review Commission that appellant quit his employment without just cause and, therefore, we affirm the decision of the common pleas court.
It is undisputed that appellant injured his knee and was off work for two days because of his injury. It is also undisputed that appellant was told by Richard Hileman to present a doctor's release prior to his return to work. It is similarly undisputed that appellant never presented his employer with the requested work release. In light of these undisputed facts, appellant's failure to comply with his employer's request amounted to a quit without just cause and, therefore, forfeiture of entitlement to unemployment compensation benefits.
Appellant contends, however, that he was not told, as the Review Commission found, to bring in a doctor's release as a condition of returning to work — he was told only to get a doctor's release. Therefore, appellant contends, he was justified in simply waiting at home, pursuant to past practice, until Blast Cleaning called him back to work. Appellant also contends that Hileman's request for a doctor's release was a new requirement that had previously never been required when he was laid off. Accordingly, appellant contends, because the requirement of a doctor's release conflicted with the established recall practice, it could not be imposed unless Blast Cleaning proved that it was fair and that he understood the requirement. Finally, appellant contends that the conflict between the existing recall practice and the new requirement of a doctor's release created confusion on his part such that his failure to provide the release was justifiable, rather than a quit without just cause.
We do not find these arguments persuasive. First, appellant testified that he was aware that his employer required a medical release. Moreover, there is no evidence in the record regarding any prior incident when an injured employee returned to work at Blast Cleaning after a layoff. Accordingly, there is nothing in the record to support appellant's contention that the requirement of a medical release prior to an injured employee's return to work was a new requirement. Rather, according to the statement by the employer contained in the record, and as corroborated by appellant's testimony, a medical release was required prior to returning to work following an injury.
Finally, the evidence does not support appellant's contention that he was confused about the requirement that he obtain a doctor's release before returning to work. Instead, as indicated in Richard Hileman's letter to OBES, when informed about the requirement of a doctor's release, appellant became angry, left Blast Cleaning and filed for unemployment compensation that day. Appellant's letter to the Review Commission dated June 14, 1999, although obviously not evidence considered by the Review Commission in making its decision, confirms that appellant was angry, rather than confused, about the request for a medical release. In his letter, appellant stated that he considered Hileman's request for a medical release as yet another one of his games and he was done playing games.
In Tzangas, supra at 697-698, the Supreme Court of Ohio explained the purpose of the Unemployment Compensation Act:
 The Act exists to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and in keeping with the humanitarian and enlightened concepts of the modern day. * * * The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. * * *
The evidence in this record demonstrates that appellant quit his job at Blast Cleaning because he was asked to provide a medical release prior to his return to work. We find, therefore, that the trial court's affirmance of the Review Commission's decision finding that appellant quit without just cause and denying unemployment compensation benefits was not unlawful, unreasonable or against the manifest weight of the evidence.
Appellant's assignment of error is overruled.
It is ordered that appellees recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________________________ TIMOTHY E. McMONAGLE, PRESIDING JUDGE:
MICHAEL J. CORRIGAN, J. and JAMES J. SWEENEY, J., CONCUR.