[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 694.]

TZANGAS, PLAKAS & MANNOS, ATTORNEYS, APPELLEE, *v.* ADMINISTRATOR, OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLANT.

[Cite as *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 1995-Ohio-206.]

*Unemployment compensation—Appellate court may reverse the Unemployment Compensation Board of Review's "just cause" determination, when—Fault on behalf of employee is an essential component of a just cause termination—Unsuitability for a position constitutes fault sufficient to support a just cause termination—Employer may properly find an employee unsuitable for the required work, and thus to be at fault, when.*

1. An appellate court may reverse the Unemployment Compensation Board of Review's "just cause" determination only if it is unlawful, unreasonable or against the manifest weight of the evidence.

2. Fault on behalf of the employee is an essential component of a just cause termination.

3. Unsuitability for a position constitutes fault sufficient to support a just cause termination

4. An employer may properly find an employee unsuitable for the required work, and thus to be at fault, when: (1) the employee does not perform the required work, (2) the employer made known its expectations of the employee at the time of hiring, (3) the expectations were reasonable, and (4) the requirements of the job did not change substantially since the date of the original hiring for that particular position.

(No. 94-564—Submitted April 26, 1995—Decided September 13, 1995.)

CERTIFIED by the Court of Appeals for Stark County, No. CA-9371.

————————————

**{¶ 1}** Claimant Denise L. Hammad worked as a word processor for the appellee law firm, Tzangas, Plakas & Mannos ("the firm"), from October 18, 1990 until July 23, 1991. Hammad's duties included processing legal documents and letters which were dictated by the various attorneys in the office. When she was hired, the firm expected that Hammad would perform rapid and errorless typing.

**{¶ 2}** The quality and quantity of Hammad's work product failed to meet the firm's expectations. Hammad persistently made serious typing errors, which were compounded by her failure to proofread her work product. There were times when simple documents would go through three or four drafts in order to correct errors which could have been corrected at the outset by a competent word processor.

**{¶ 3}** The firm reprimanded Hammad on two occasions, notifying her that her job was in jeopardy and that she needed to improve. Although the firm's office manager noted that Hammad's performance had improved somewhat at the time of the second reprimand, Hammad was never able to improve enough to meet her employer's expectations.

**{¶ 4}** That fact is best exemplified by Hammad's last day on the job. An attorney in the firm requested Hammad to prepare six form notices, which required Hammad only to type in names, dates, and times. The assignment had to be returned to Hammad for corrections three or four times, and still the notices were sent out containing mistakes.

**{¶ 5}** Based upon these facts, on July 23, 1991, the firm discharged Hammad for failing to adequately perform her job duties. On August 1, 1991, Hammad applied for unemployment compensation benefits, and her application was allowed by the Administrator of the Ohio Bureau of Employment Services ("administrator") on September 18, 1991. On reconsideration, that decision was affirmed on November 8, 1991.

**{¶ 6}** The firm appealed that decision, but on March 23, 1992, following an oral hearing with both parties present, a referee Of the Unemployment Compensation Board of Review ("the board") affirmed the administrator's decision allowing the benefits. The referee ruled that absent evidence of willful or wanton misconduct by Hammad, the firm did not discharge her for just cause in connection with work.

**{¶ 7}** On April 10, 1992, the firm instituted a further appeal to the board. On July 24, 1992, the parties had a hearing before another board referee. The board, on September 4, 1992, found that Hammad's inability, not her unwillingness, to improve her typing skills, led to the firm's firing of her. The board concluded that Hammad's inability to perform her job did not constitute fault and that she was therefore discharged without just cause, for unemployment compensation purposes.

**{¶ 8}** The firm appealed the board's decision to the Court of Common Pleas of Stark County. On April 30, 1993, the court affirmed the board's decision. The court determined that there was no fault on the part of Hammad and that she was merely incapable of performing her job. The court found that that inability did not constitute fault, and that an employee can be found at fault only upon a "willful or heedless disregard of duty or violation of [employer] instructions."

**{¶ 9}** On May 28, 1993, the firm appealed to the Stark County Court of Appeals. On December 30, 1993, the appellate court reversed the decision of the trial court. The court determined that as an appellate court, it had the same duty as the common pleas court to determine whether the board's decision was unlawful, unreasonable, or against the manifest weight of the evidence. The court rejected the lower court's and the board's fault-based analysis and developed in its place a "totality of the circumstances test." Based upon that test, the court determined that "[Hammad's] inability to perform said tasks, while not her or anyone else's fault, served as a sufficient justification for her dismissal."

**{¶ 10}** On January 31, 1994, the administrator filed a motion to certify a conflict. On February 17, 1994, the appellate court, finding that certain aspects of its December 30, 1993 decision conflicted with other Ohio appellate court decisions, certified the record of the case to this court for review and final determination. Specifically, the appellate court found a conflict regarding its standard of review in unemployment compensation appeals, and a conflict regarding its rejection of fault-based analysis.

———————————

*Tzangas, Plakas & Mannos*, *Beth A. Raies* and *David L. Dingwell*, for appellee.

*Betty D. Montgomery*, Attorney General, *James A. Barnes* and *Stefan J. Schmitt*, Assistant Attorneys General, for appellant.

———————————

**PFEIFER, J.**

**{¶ 11}** In this case we resolve three issues: (1) the scope of an appellate court's review of unemployment compensation cases, (2) whether an employee must be at fault in order for a termination to be made for just cause, and (3) whether unsuitability for required work constitutes fault sufficient to support a just cause termination. On the first issue, we find that appellate courts may reverse a board decision if it is unlawful, unreasonable or against the manifest weight of the evidence. On the second issue, we find that fault is required for a termination to be made with just cause. Finally, unsuitability for a position constitutes fault sufficient to support a just cause termination.

I

**{¶ 12}** In *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17-18, 19 OBR 12, 15, 482 N.E.2d 587,590, this court held that reviewing courts may reverse "just cause" determinations "if they are unlawful, unreasonable, or against the manifest weight of the evidence." This court noted that while appellate

courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record. *Id.* at 18, 19 OBR at 15, 482 N.E.2d at 590. This duty is shared by all reviewing courts, from the first level of review in the common pleas court, through the final appeal in this court.

{¶ 13} Former R.C. 4141.28(O), now renumbered R.C. 4141.28(O)(1), the statute setting forth the appeals process for unemployment compensation cases, does not create distinctions between the scope of review of common pleas courts and appellate courts. To apply the same standard at each appellate level does not result in a *de novo* review standard. As this court stated in *Irvine*, "[t]he fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision." *Irvine* at 18, 19 OBR at 15, 482 N.E.2d at 590. The board's role as factfinder is intact; a reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence.

II

{¶ 14} To be eligible for unemployment compensation benefits in Ohio, claimants must satisfy the criteria established pursuant to R.C. 4141.29(D)(2)(a), which provides:

"(D) * * * [No] individual may * * * be paid benefits * * * :

"* * *

"(2)For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work * * * ."

{¶ 15} In *Irvine*, *supra*, this court stated that "'[t]raditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" *Irvine* at 17, 19 OBR at 14, 482 N.E.2d at 589, citing *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 12, 73 O.O.2d

8, 9, 335 N.E.2d 751, 752. Just cause determinations in the unemployment compensation context, however, also must be consistent with the legislative purpose underlying the Unemployment Compensation Act. The Act exists "'to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.'" (Emphasis *sic*.) *Irvine* at 17, 19 OBR at 14, 482 N.E.2d at 589, citing *Leach v. Republic Steel Corp.* (1964), 176 Ohio St. 221, 223, 27 O.O.2d 122, 123, 199 N.E.2d 3, 5. "'The [A]ct act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.'" *Irvine* at 17, 19 OBR at 14, 482 N.E.2d at 589, citing *Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St.2d 35, 39, 15 O.O.3d 49, 52, 399 N.E.2d 76, 79. Thus, while a termination based upon an employer's economic necessity may be *justifiable*, it is not a *just cause* termination when viewed through the lens of the legislative purpose of the Act.

{¶ 16} The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.

{¶ 17} While this court did hold in *Irvine* that "[t]he determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case," *Irvine* at 17, 19 OBR at 15, 482 N.E.2d at 590, that does not compel the appellate court's abandonment of fault-based just cause analysis in favor of a "totality of the circumstances" examination. Instead, *Irvine* recognizes that the question of fault cannot be rigidly defined, but, rather,

6

can only be evaluated upon consideration of the particular facts of each case. If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause. Fault on behalf of the employee remains an essential component of a just cause termination.

### III

{¶ 18} In this case, the question is whether Hammad's unsuitability to perform the work required by the firm constituted fault for which the firm may have discharged her for just cause. The common pleas court held that an employee satisfies the fault requirement only upon a "willful or heedless disregard of duty or violation of [employer] instructions." To rule that way is to ignore that *ability* is relevant in the workplace. There is little practical difference between an employee who *will not* perform her job correctly and one who *cannot* perform her job correctly. In either case, the performance of the employee is deficient. That deficiency, which does not result from any outside economic factor, constitutes fault on the employee's behalf.

{¶ 19} To find that an employee is entitled to unemployment compensation when she is terminated for her inability to perform the job for which she was hired would discourage employers from taking a chance on an unproven worker. Most employees need an employer to take a leap of faith when initially hiring them. An employer relies upon an employee's representations that she can adequately perform the required work. Likewise, an employee relies upon an employer's description of what the job will entail. The party that fails to live up to those expectations is at fault.

{¶ 20} Unsuitability for a position constitutes fault sufficient to support a just cause termination. An employer may properly find an employee unsuitable for the required work, and thus to be at fault, when: (1) the employee does not perform the required work, (2) the employer made known its expectations of the employee at the time of hiring, (3) the expectations were reasonable, and (4) the requirements

of the job did not change since the date of the original hiring for that particular position.

{¶ 21} In this case, there is no dispute that Hammad continually made serious typing and proofreading errors requiring duplicative efforts by her and by attorneys at the firm. At every level in this case, Hammad was found to be unsuitable for the required work. The record establishes that the firm made reasonable efforts to avoid terminating Hammad, including verbal reprimands and warnings that she would be discharged unless her performance improved. Second, Hammad never claimed that she was unaware of the requirements of her job or of the demanding performance expected of her as a normal part of her employment. Third, testimony at the board hearing shows that a word processor hired at the same time as Hammad had fulfilled the firm's expectations and continued to be employed by the firm, demonstrating the reasonableness of the job's requirements. Finally, Hammad was not the victim of downsizing at the firm, nor was her original job description changed to a position different from the one she originally accepted.

{¶ 22} That Hammad wished to perform better cannot obviate the plain fact that she could not fulfill the minimum standards the firm required of her. She was simply terminated because she could not do the required work. While that may not be her fault in a moral sense, it does constitute fault in a legal sense sufficient for her termination to have been made with just cause.

{¶ 23} For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK and F. E. SWEENEY, JJ., concur.

WRIGHT and COOK, JJ., separately concur.

_____

WRIGHT, J., concurring.

**{¶ 24}** I concur in paragraphs one, two, and three of the syllabus and the judgment only.

COOK, J., concurs in the foregoing concurring opinion.

_____