KALE, Appellant,

v.

**OHIO UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.**

[Cite as *Kale v. Ohio Unemp. Comp. Bd. of Review* (1996), 109 Ohio App.3d 444.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–95–030.

Decided Feb. 16, 1996.

*George C. Ford,* for appellant.

*Charlett Bundy,* for appellee.

HANDWORK, Judge.

Appellant, Barbara J. Kale, applied for work at a factory in Willard, Ohio, on January 3, 1994. She was interviewed, hired, and began working on that same day. She worked two days, suffered an allergic reaction to cigarette smoke she was exposed to in the factory, and quit her job after talking with the personnel director on the telephone about her problem. She applied for unemployment compensation on January 7, 1994. Her claim was granted on January 26, 1994 by the Ohio Bureau of Employment Services.

The employer sought reconsideration of the determination that appellant was entitled to benefits. The Administrator's reconsideration decision was that appellant had quit her employment for just cause and that she was entitled to unemployment compensation. The employer appealed to the Ohio Unemployment Compensation Board of Review ("board").

A hearing was held on July 21, 1994. On July 29, 1994, the board issued a decision denying appellant unemployment compensation benefits. Appellant sought a reconsideration, which was denied, and then filed an appeal to the Huron County Court of Common Pleas. On May 3, 1995, the Huron County Court of Common Pleas filed a judgment entry in which it ruled that the decision of the board was lawful, reasonable and supported by the manifest weight of the evidence. Appellant then filed this appeal.

Appellant presents three assignments of error, which are:

"Assignment of Error No. 1: The Court below erred to the prejudice of the Appellant in finding that Defendant–Appellee Board's Finding was supported by the manifest weight of the evidence.

"Assignment of Error No. 2: The Court below erred to the prejudice of the Appellant in finding that Defendant–Appellee Board's Finding was reasonable.

"Assignment of Error No. 3: The Court below erred to the prejudice of the Appellant in finding that Defendant–Appellee Board's Finding was lawful."

The Supreme Court of Ohio recently explained the standard of review to be used by appellate courts in unemployment cases involving a dispute over just cause and ruled:

"An appellate court may reverse the Unemployment Compensation Board of Review's 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207, paragraph one of the syllabus.

The Supreme Court stated:

"[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record. * * * This duty is shared by all reviewing courts, from the first level of review in the common pleas court, through the final appeal in this court." *Id.* at 696, 653 N.E.2d at 1210.

Whether an employee had just cause to quit employment "depends upon the unique factual considerations of the particular case." *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19 OBR 12, 15, 482 N.E.2d 587, 590. Just cause is defined as " 'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " *Id.* at 17, 19 OBR at 14, 482 N.E.2d at 589. Persons who develop medical problems that prevent them from continuing their same job have an obligation to inform their employer of the medical problem, and to allow the employer to make accommodations for the medical problem so that the employee can continue to work for the employer. *Id.* at 18–19, 19 OBR at 15–16, 482 N.E.2d at 590–591. Keeping these standards in mind, we now consider appellant's three assignments of error together.

The finding of the board appellant is challenging on appeal reads as follows:

"Appellant contends that she properly resigned her employment at Modern Tool & Die for medical reasons. The evidence does not support claimant's contention.

"Claimant indicated on her employment application that she was not suffering from any physical disabilities or limitations. She then worked two days and resigned for medical reasons. Claimant was not advised to quit by her physician. She presented no documentation to the employer which would allow them to make some accommodation for her disability.

"Furthermore claimant must have been aware of the working environment at Modern Tool & Die. She had worked at the plant on two previous occasions. She said she had many friends who worked for the company. It is difficult to believe that claimant was unaware that there was smoking in the work place.

"In any event, claimant was obligated to seek advice from a medical professional before quitting for medical reasons. She was also obliged to present such evidence to the employer to allow them to make accommodations. Claimant did none of these things.

"For these reasons it will be held that claimant quit her employment with Modern Tool & Die without just cause. The Administrator's decision on reconsideration must be reversed."

The first finding of the board, that appellant had indicated on her employment application that she did not suffer from any "physical disabilities or limitations" is

not entirely supported by evidence in the record. While it is true that appellant testified that when she completed an application for employment she answered "no" to the following two questions:

"Are there any limitations of work or duties you cannot perform because of a mental/physical disability?

"Are special accommodations required to assist you because of a mental/physical disability?

"If yes to any of the above, please explain."

Appellant also testified that she did write on the application that she wears a hearing aid. Accordingly, appellant did make an attempt to inform the employer of a physical disability, *i.e.*, loss of hearing.

When appellant was asked at the hearing why she did not inform the employer of her allergy when she read the above questions on the employment application, she responded:

"[Y]ou've got to remember, I worked for 27 years in the Brunswick Pioneer system in a great many areas and qualified in every area. So I did not consider that there would be smoking and smoking might be a problem because I had not came [*sic* ] up against that before."

She further explained that in the Brunswick Pioneer factory, smoking was only allowed in break rooms, so she managed the problem of allergic reaction to cigarette smoke by avoiding the break rooms. When she was asked, "Is there any reason why you did not indicate that you suffered from an asthmatic condition?" she responded, "Because I keep it pretty much under control." Appellant's responses show that she acted reasonably when she answered "no" to the questions on the application, since, in her experience, her allergy to cigarette smoke was not a physical disability that put a limitation on the work or duties she could perform and she had never required any special accommodation at work because of her allergy.

The second finding of the board, that appellant worked at the factory for two days and then resigned for medical reasons is supported by the evidence in the record. Appellant and the personnel manager for the employer both testified that appellant had worked for two days before resigning. Appellant's testimony and a letter from her doctor that was admitted as an exhibit verified that she had medical reasons for her resignation, *i.e.,* a severe allergy to cigarette smoke that made her unable to work in a smoke-filled environment. The employer never disputed that appellant has a medical condition.

The third finding, that appellant was not advised to quit her job by her physician, is supported by the evidence to the extent that the testimony of

appellant verified that she did not speak with her doctor before she resigned. The fourth finding, that appellant did not provide the employer with any documentation regarding her medical condition, is also supported by her testimony. However, as we will discuss shortly, the use of these findings by the board to support the conclusion that appellant quit without just cause was erroneous in this case.

The fifth finding, that appellant "must have been aware of the working environment" at the factory, and the sixth finding, that appellant had worked at the factory on two previous occasions, are not supported by the evidence in the record. Appellant testified that she had worked at the factory on one previous occasion, sometime in 1953 or 1954. She did take a maternity leave and returned to work for a few months before deciding to quit to stay home with her children, but that can only be construed as one previous employment with the factory.

At the time she worked there, no smoking was allowed in the factory. Appellant also testified that she was not told during her interview that smoking was now allowed in the factory. The personnel director of the employer confirmed in her testimony that appellant would not have been told during the interview that smoking was permitted in the work areas of the factory. Appellant testified that it never occurred to her that smoking was allowed because (1) no smoking was allowed in the factory when she worked there in the 1950s; (2) she worked in another factory for twenty-seven years and no smoking was allowed in the work areas there; and (3) several of her friends from the closed factory were hired by the factory that is the subject of this case before she was, and none of them smoke. Accordingly, contrary to the finding of the board, all the evidence in the record supports a finding that appellant had no reason to know that smoking was allowed in the work areas of the factory, and that she was never told that smoking was allowed in the work areas of the factory.

█ The board next made a finding that appellant "was obligated to seek advice from a medical professional before quitting for medical reasons." As we noted previously in this opinion, a just cause case is determined "upon the unique factual considerations of the particular case." *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d at 17, 19 OBR at 15, 482 N.E.2d at 590. In this case, the evidence shows that (1) appellant has a long-standing allergy to cigarette smoke that has increased in severity over the years; (2) appellant has been under medical treatment for the allergy for several years; (3) appellant has coped with the allergy by limiting her exposure to cigarette smoke and by using prescription medication to control her symptoms when the allergy is triggered; and (4) her doctor submitted a letter to the board, which was admitted as an exhibit, in which he states that appellant has a medical condition aggravated by cigarette smoke and she cannot work in a smoke-filled environment. We agree with appellant

that it is elevating form over substance to require an individual who has a long-standing knowledge of steps required to avoid a flare-up of an allergy to see a doctor again, when the same conditions emerge, to get the doctor to utter the magic words that the individual cannot work under the aggravating condition and that she must quit the job before the individual has just cause to quit. The only case cited by appellee to support the contention that a doctor must first give advice before an individual can quit a job for medical reasons is an unreported case, *Sams v. Admr.* (Feb. 21, 1985), Cuyahoga App. No. 48688, unreported, 1985 WL 6646, and it is distinguishable because while the court noted that the employee in that case did not consult with a doctor before resigning, the court also noted that the employee "failed to establish with credible evidence that her illness was caused and/or aggravated by the conditions of her employment * * *." *Id.* In this case, it is undisputed that appellant has an allergy to cigarette smoke, and that the smoke-filled atmosphere at the factory triggered her migraine headache and strangling sensation. Since appellant did include evidence in the record from a medical professional that her medical condition precluded her from continuing to work in the environment at the factory, she has met her obligation of showing that she had a reason that an ordinarily intelligent person would consider to be a justifiable reason for quitting her job at the factory.

The board also made the finding that appellant was "obliged to present * * * evidence to the employer to allow them to make accommodations. Claimant did none of these things." Appellant testified she never gave documentation of her medical condition to the factory; however, the personnel director for the employer testified that none was requested. At no time during the proceedings relating to appellant's claim for unemployment benefits was any contention made by the employer that appellant did not have the medical condition she claimed forced her to quit her job. Indeed, the examiner's finding of fact issued in March 1994 contains the statement: "Employer agreed that she was pallegeric [*sic*] to the smoke." The board states in its brief to this court: "The veracity of Appellant's smoke allergy is not at issue." Accordingly, appellant did alert the employer to her medical condition.

■ However, following a complete review of the record, the finding of the board that appellant did not allow the employer to make accommodations for her medical condition is not unlawful, unreasonable or against the manifest weight of the evidence because appellant failed to meet her burden, pursuant to *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587, syllabus, to show that she gave the employer opportunity to accommodate her condition or that the employer refused to make any accommodation.

Appellant's first, second and third assignments of error are not well taken. The ruling of the Huron County Court of Common Pleas in favor of the Ohio Unemployment Compensation Board of Review is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

GLASSER, J., concurs.

ABOOD, J., concurs in judgment only.