OPINION
{¶ 1} This appeal comes to us from the Greene County Court of Common Pleas, which reversed an administrative agency's decision denying the claimant, Brenda Barney, unemployment compensation. The common pleas court determined that the agency erred when it concluded that the claimant was discharged for just cause. Because we conclude, upon review of this record, that the claimant, who was off from work due to illness, made a reasonable attempt to obtain from her physician the additional information her employer demanded, we agree with the common pleas court that she was discharged without just cause. The judgment of the trial court is affirmed.
 I {¶ 2} Barney worked at GNC from May 17, 1999 until her discharge on September 16, 1999. On September 7, 1999, she failed to report to work. However, she notified her supervisor that she was unable to work that day because she was ill. She also notified her supervisor that she believed her illness was related to a workers' compensation claim she had filed thirty days earlier, and that she was going to reopen the claim. Barney sought treatment from her family physician, Dr. Donald Turner, who provided a form stating that she was to be off work effective September 7, 1999, and that her return-to-work date was pending the results of some tests administered by the doctor.
 {¶ 3} GNC contacted Dr. Turner to inquire about the date that Barney might return to work. GNC was informed that Dr. Turner would not be releasing Barney to return to work until the testing he ordered was completed. GNC was also informed that Dr. Turner was not the physician of record for the workers' compensation claim, and that Barney would have to transfer her medical documentation to him before the workers' compensation claim could be reopened.
 {¶ 4} Thereafter, a GNC representative contacted Barney and informed her that her medical documentation was not sufficient to reopen the workers' compensation claim and that she needed to provide documentation specifying a return-to-work date. Barney contacted Dr. Turner's office and requested that a more specific note be sent to GNC. However, no additional medical documents were provided to GNC.
 {¶ 5} Barney did not contact GNC after September 8, 1999, nor did she report to work. GNC's employment handbook contains the following provision:
 {¶ 6} "CALL IN: You must call in when advance notification is not possible. You must call in each day within 30 minutes of starting time. Any employee absent two (2) consecutive days without notifying his/her team leader, team captain, or the team manager, will be automatically discharged for job abandonment."
 {¶ 7} After Barney had missed more than six days of work without calling in, she was discharged by letter.
 {¶ 8} Barney filed a claim for unemployment benefits, which was initially allowed by the Ohio Department of Job and Family Services upon a finding of no just cause for dismissal. Upon GNC's request for reconsideration, the matter was transferred to the Ohio Unemployment Compensation Review Commission, which denied the claim following an evidentiary hearing. Barney filed an application for further appeal with the Review Commission, but her application was denied. Thereafter, On March 2, 2000, Barney appealed to the Greene County Court of Common Pleas, pursuant to R.C. 4141.28. A magistrate held a hearing, and later filed a decision entry reversing the decision of the board of review and finding that Barney had been discharged without just cause. The magistrate's decision was adopted by the trial court. From that judgment, the Ohio Bureau of Employment Services appeals.
 II {¶ 9} The Bureau's sole Assignment of Error asserts:
 {¶ 10} "THE LOWER COURT ERRED BY REVERSING THE DECISION OF THE REVIEW COMMISSION WHEN SUCH DECISION WAS NOT UNLAWFUL, UNREASONABLE, OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE".
 {¶ 11} The Bureau contends that the common pleas court erred in reversing its decision to deny benefits to Barney.
 {¶ 12} In an appeal of a decision of the Unemployment Compensation Board of Review, the common pleas court may reverse the board's "just cause" decision only if it was "unlawful, unreasonable, or against the manifest weight of the evidence * * *." Tzangas, Plakas Mannos v. OhioBur. of Emp. Serv., 73 Ohio St.3d 694, 1995-Ohio-206, paragraph one of the syllabus. Just cause "`is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'"Id., at 697, citation omitted. Furthermore, an analysis of just cause must also consider the policy behind the Unemployment Compensation Act, which "`was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.'" Id., citation omitted. Accordingly, "fault" on an employee's part is an essential component of just-cause termination. Id. at paragraph two of the syllabus.
 {¶ 13} The determination of just cause depends upon the "unique factual considerations" of a particular case and is therefore primarily an issue for the trier of fact (i.e., the bureau and the commission).Irvine v. Unemp. Comp. Bd. of Review (1985), 19 Ohio St.3d 15, 17. "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision." Id. at 18. Findings supported by some competent credible evidence will not be reversed as against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstr. Co. (1987), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.
 {¶ 14} In this case, the facts are not disputed. The only issue is whether the facts support the Review Commission's finding of just cause for Barney's dismissal. The hearing officer for the Review Commission found that Barney had violated GNC's policy concerning absences without notification when she failed to provide additional medical documentation requested by GNC regarding the return-to-work date, and then failed to call in, per company policy. In reversing the Review Commission, the common pleas court stated:
 {¶ 15} "In this case [Barney] called off work on the first day of absence and provided a medical excuse which left her return date open-ended. The employer confirmed that [Barney] would not be released to work until certain test[s] were completed. GNC had absolutely no legitimate or reasonable expectation that [Barney] would be medically able to return to work until released by her doctor. Although the excuse did not give an exact date of return neither was the absence for an entirely `indefinite' duration. To the contrary, GNC was on notice that it would receive more definite information pending the outcome of certain testing which GNC had no reason to believe would not be conducted expeditiously. * * * GNC discharged [Barney], not because it was in the dark about [her] absence but because she was in technical violation of its inflexible call-in policy."
 {¶ 16} We conclude that Barney was not at fault with regard to the failure to provide the requested documentation. It is undisputed that Barney contacted Dr. Turner, whom she had engaged as her treating physician, and asked him to provide more specific documentation regarding her release date, but that Dr. Turner did not provide it. Barney was not in a position to compel Dr. Turner to provide additional information. All she could do was request it, which she did.
 {¶ 17} Furthermore, our reading of the GNC policy would indicate that Barney was in compliance with the notification rule. Specifically, the rule states that if advance notification of an absence is not possible, an employee must call in daily within thirty minutes of the start of her work shift. In this case, Barney provided advance notice, in the form of her doctor's excuse, that she would be absent from work until released to return by Dr. Turner. Therefore, according to the language of the company policy, she was not required to make daily calls to the company during the time period covered in the note.
 {¶ 18} Thus, we agree with the common pleas court that Barney was terminated without just cause. The failure of the doctor to provide a return-to-work date was not Barney's fault. Barney did not act unreasonably in failing to call in every day, as the doctor's excuse served as advance notice of her absence. Thus, an ordinarily intelligent person would not find her to be at fault.
 {¶ 19} The Bureau's sole Assignment of Error is overruled.
 III {¶ 20} The Bureau's sole Assignment of Error having been overruled, the judgment of the common pleas court is affirmed.
BROGAN and YOUNG, JJ., concur.