JOURNAL ENTRY OPINION
{¶ 1} Plaintiff-appellant Joseph H. Stimson appeals from the decision of the Common Pleas Court that affirmed the appellee's decision to deny plaintiff's application for benefits. For the reasons that follow, we reverse.
 {¶ 2} The following is undisputed: Plaintiff worked for Team America 1 ("Team America") from 1992 until 2002. According to his March 2001 performance review, Team America considered plaintiff an excellent employee for reasons including, but not limited to, his self-motivation and dedication to the company. His supervisor did not believe they could find "anyone more willing to do whatever is necessary to get the job done, no matter what cost." Even according to Team America, plaintiff historically put in at least 50 to 60 hours a week on the job.
 {¶ 3} As the company grew, plaintiff's responsibilities increased. Team America ultimately hired two employees to assist plaintiff. However, in 2001 the Company decided to lay off one of those employees over plaintiff's objection. Since the employee was not replaced, plaintiff necessarily absorbed her job functions.[1] Consequently, plaintiff's hours spiked to an average 81 hours a week.
 {¶ 4} Plaintiff requested help to no avail. While plaintiff continued to complain about the excessive hours, he strived to provide the same level of service to the customers. Plaintiff finally resigned because he could no longer work eighty-plus hours per week.
 {¶ 5} Team America admitted that plaintiff was its only employee that worked those hours and that plaintiff told the Company that he could not continue to work those hours. Team America did not deny that plaintiff repeatedly asked for help.
 {¶ 6} Team America supplied a response to the agency's request for information, but otherwise did not appear in this matter. Plaintiff's application was denied by the determination mailed February 25, 2002, and that decision was affirmed on his subsequent appeals to the Unemployment Compensation Review Commission ("UCRC"). Ultimately, the UCRC concluded that plaintiff resigned his position without just cause, although it found that he "was clearly working an excessive amount of hours" and that this "could have developed into personal and or health problems." The trial court affirmed the UCRC's decision on July 31, 2003, from which plaintiff has perfected this appeal. In his sole assignment of error, plaintiff contends as follows:
 {¶ 7} "I. The trial court erred to the prejudice of appellant Joseph H. Stimson in finding that the decision of the Unemployment Compensation Review Commission was not unlawful, unreasonable or against the manifest weight of the evidence thereby affirming the Commission's decision to deny unemployment compensation benefits to appellant."
 {¶ 8} "An appellate court may reverse the Unemployment Compensation Board of Review's `just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." Tzangas, Plakas Mannos v. Ohio Bur. of Emp.Serv. (1995), 73 Ohio St.3d 694, paragraph one of the syllabus; see, also, Irvine v. Unemp. Comp. Bd. of Review (1985),19 Ohio St.3d 15. Appellate courts have the duty to determine whether the board's decision is supported by the evidence in the record. Id. at 18.
 {¶ 9} "`Traditionally, just cause, in the statutory sense, is that which, to an ordinary intelligent person, is a justifiable reason for doing or not doing a particular act.' * * * Just cause determinations in the unemployment compensation context, however, also must be consistent with the legislative purpose underlying the Unemployment Compensation Act * * * `to enable unfortunate employees who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.'" Tzangas,73 Ohio St.3d at 697.
 {¶ 10} We are to determine the existence of just cause on a case-by-case basis since "`just cause necessarily depends upon the unique factual considerations of the particular case,'" Id. at 698, quoting Irvine, supra at 17.
 {¶ 11} Based on the foregoing standards, we find that this assignment of error has merit and reversal is warranted. The determination that plaintiff voluntarily chose to work those hours and that he therefore quit without just cause is against the weight of evidence in the record.
 {¶ 12} There is only one sentence in the entire record that could even arguably support the finding that plaintiff voluntarily worked eighty-plus hours a week in a salaried exempt position until he ultimately quit. In response to the Ohio Department of Job and Family Services Request for Information, Team America conceded that "[Plaintiff] stated he could not continue to work 80 hrs/week" but maintained that "[h]e was told he didn't need to work that many [hours]." (R. 7). This is ambiguous at best. Did Team America believe that plaintiff could accomplish all of his job responsibilities in less time and therefore did not "need" to work those hours? Or, did Team America mean that they told him he was not expected to do all the work that required him to put in eighty-plus hour weeks? Team America chose not to appear at the ensuing hearing on appeal and/or give any further explanation in this record. The balance of the evidence suggests that plaintiff was forced to work those hours as a result of Team America's decision, over plaintiff's objection, to terminate his assistant and refusal to provide him any relief.
 {¶ 13} An employer's change in the employee's working conditions can serve as just cause for that employee's decision to resign. See Glynn v. Import Automotive Service (1978), Lucas App. No. L-77-284. Likewise, an employee's resignation as a result of work pressures created by the employer's imposition of additional duties on the employee beyond their work capacity is made with "just cause." Kryzyston v. Industrial Commission ofOhio (1977), 52 Ohio App.2d 109, 111.
 {¶ 14} In Glynn, the employer had granted the employee's request to work reduced hours. However, subsequently, the employer increased Glynn's hours to 52 a week. Glynn chose to quit rather than to work the increased hours. On appeal, the Sixth District reversed the agency's decision that found Glynn had quit without just cause.
 {¶ 15} In Krzyston, the employer increased the plaintiff's work load such that she had insufficient time to complete her expected responsibilities. Krzyston quit believing that she faced probable discharge for her inability to complete the added responsibilities. The appellate court reversed the lower court's decision that found she had quit without just cause.
 {¶ 16} This case is analogous to Glynn and Krzyston. Team America had granted plaintiff's request for assistance by hiring additional employees to reduce his work load and hours accordingly. However, Team America subsequently decided to lay off the employee who plaintiff felt provided him the most relief and assistance. Plaintiff objected and continued working but repeatedly asked for more help, which requests Team America ignored.
 {¶ 17} Plaintiff denied that he voluntarily chose to work those hours. He felt if he did not do so he would lose his job. The following is excerpted from his sworn testimony:
 {¶ 18} "I noticed that [the Company representative] said that I chose to work the hours. I guess, that's a matter of defining the word chose. If you're going to do it because you have to service your clients and you know you have to do your job or ifyou don't do your job, then you're going to have a problem withyour employer, that's one way. If you're saying you chose to do it just because I wanted to work extra hours, that wasabsolutely not true." (R. 7, UCRC Trans. p. 18, emphasis added).
 {¶ 19} The record is replete with evidence of the strain plaintiff was under from derailed vacation plans to potential marital discord. Moreover, appellee does not refute these points but continues to maintain that plaintiff voluntarily chose to subject himself to this regimen for some reason other than his stated belief that his job depended on it. Plaintiff contends that any ordinary, intelligent person would have been justified in quitting, as he ultimately did, under these circumstances. We agree.
 {¶ 20} Plaintiff is a hard working man who took pride in his job and felt a sense of loyalty to his employer and customers of nearly a decade. Team America's awareness of plaintiff's work ethic is obvious from the record and we can only infer that it knew, if not expected, that he would pick up the slack when it laid off an employee that provided him needed assistance. Team America's refusal to hire additional employees or otherwise decrease plaintiff's job responsibilities further justifies plaintiff's resignation. If plaintiff was so willing to "volunteer" these hours to benefit the company (at his expense), he would not have objected to his coworker's layoff or continued to ask the company for help. As it is often said, "good work is only rewarded with more work" and that certainly seems to be the case here. This record establishes that plaintiff quit with just cause and the contrary finding is against the weight of the evidence.
 {¶ 21} Based on the foregoing, plaintiff's sole assignment of error is sustained.
 {¶ 22} The judgment is reversed.
Judgment reversed.
 Gallagher and Rocco, JJ., concur.
It is ordered that appellant recover of appellee his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The remaining employee was unable to contribute more hours due to other commitments.