[Cite as *Fulton v. Ohio Dept. of Job & Family Servs.*, 2011-Ohio-5673.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96562**

## JERRY FULTON

PLAINTIFF-APPELLANT

vs.

## OHIO DEPARTMENT OF JOB AND FAMILY SERVICES

DEFENDANT-APPELLEE

**JUDGMENT:
AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-684448

**BEFORE:**   Keough, J., Celebrezze, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:**   November 3, 2011

**ATTORNEY FOR APPELLANT**

Sylvester Summers, Jr.
Sylvester Summers, Jr., Co., LPA
Lexington Village
7804 Linwood Avenue
Cleveland, OH 44103

**ATTORNEYS FOR APPELLEE**

Michael DeWine
Ohio Attorney General
Laurel Blum Mazorow
Assistant Attorney General
State Office Building, 11th Floor
615 W. Superior Avenue
Cleveland, OH 44113-1899

KATHLEEN ANN KEOUGH, J.:

**{¶ 1}** Appellant, Jerry Fulton, appeals the decision of the common pleas court that affirmed the decision of the Ohio Unemployment Review Commission ("commission"), which found that Fulton was terminated for just cause and denied his claim for unemployment compensation. We affirm the decision of the trial court.

I

**{¶ 2}** On June 27, 2008, Fulton was discharged from his position as maintenance supervisor with MBA Realty Company, Inc. ("MBA Realty"). He filed an application for unemployment benefits, which the director of Ohio's Department of Job and Family Services disallowed upon a determination that Fulton was discharged for just cause. Fulton appealed; the director subsequently affirmed the initial determination.

**{¶ 3}** Fulton filed an appeal from the redetermination and the director transferred jurisdiction to the commission. After a hearing,[1] the hearing officer issued a decision affirming the denial of benefits and finding that Fulton was discharged for just cause. The commission subsequently denied Fulton's request for further review.

**{¶ 4}** Fulton then appealed the commission's decision to the common pleas court, which affirmed the commission's decision, finding that the decision was not unlawful, unreasonable, or against the manifest weight of the evidence. Fulton now appeals from the trial court's order.

II

**{¶ 5}** Reviewing courts (both trial and appellate) may reverse the commission's decision only if it is "unlawful, unreasonable, or against the manifest weight of the evidence." R.C. 4141.282(H); *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696, 1995-Ohio-206, 653 N.E.2d 1207. Reviewing courts cannot make factual findings or determine the credibility of witnesses, but must determine whether the commission's decision is supported by evidence in the record. Id. at 697. Every reasonable presumption should be made in favor of the commission's decision and findings of fact. *Banks v. Natural Essentials, Inc.*, Cuyahoga App. No. 95780, 2011-Ohio-3063, ¶23, citing *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350.

**{¶ 6}** Under R.C. 4141.29(D)(2)(a), a claimant is ineligible for unemployment

---

[1]The hearing began on October 10, 2008 and concluded on November 18, 2008.

compensation if he was discharged for "just cause in connection with the individual's work." "Just cause" has been defined as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemployment Comp. Bd. of Rev.* (1985), 19 Ohio St.3d 15, 17, 482 N.E.2d 587. Whether just cause exists is unique to the facts of each case. Id. The critical issue is whether the employee by his actions demonstrated an unreasonable disregard for his employer's best interest. *Piazza v. Ohio Bur. of Emp. Serv.* (1991), 72 Ohio App.3d 353, 357, 594 N.E.2d 695, citing *Kiikka v. Ohio Bur. of Emp. Serv.* (1985), 21 Ohio App.3d 168, 169, 486 N.E.2d 1233. As the Ohio Supreme Court stated in *Tzangas*, supra at 697-698:

{¶ 7} "The [Unemployment Compensation] Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination."

### III

{¶ 8} The record in this case establishes the following. Fulton worked for MBA Realty as a maintenance supervisor at the Lexington Village apartment complex. His immediate supervisor was Keysha Price.

{¶ 9} Early in March 2008, Fulton was advised that he was to prepare five apartment units at the complex for tenants who would be moving in on April 1, 2008.

But on March 26, 2008, Fulton told Mary Long, vice president of human resources at MBA Realty, and Linda Veregin, vice president of MBA Realty's northern Ohio region, that he had not yet begun to get some of the units ready for the anticipated April 1, 2008 move-in date. As a result, a worker from another apartment complex owned by MBA Realty had to help Fulton, which disrupted the work flow at the other complex. On March 27, 2008, MBA Realty issued a written warning to Fulton regarding his unsatisfactory work performance.

{¶ 10} Despite the warning, Fulton assigned his staff to duties other than prepping the five units. As a result, on March 31, 2008, MBA Realty incurred 18 hours of overtime pay. As of April 1, 2008, Fulton had not completed the work to prepare the apartments for occupancy, despite being advised of the high priority of getting the units ready. Furthermore, as of April 3, 2008, he had not even walked through all of the apartments to determine if they were ready to be occupied.

{¶ 11} On April 4, 2008, MBA Realty issued another written warning to Fulton regarding his poor work performance. The warning stated, in part, that "Jerry has once again shown poor judgment and did not follow the directives given by the VP. * * * This consistent poor performance will not be tolerated. Should he not follow the directives given and achieve the goals set forth, he may be subject to further disciplinary action up to and including termination of employment."

{¶ 12} On April 26, 2008, Fulton had a work order to repair a leak in the roof of one of the apartments. Instead of repairing the roof, Fulton worked on the pipes in the

apartment; as he worked on the pipes, the apartment caught on fire, which caused the apartment to not be ready for occupancy on May 2, 2008, as scheduled. On May 16, 2008, another apartment was not ready for tenants as scheduled because there was a hole in the closet, the faucets were leaking, and the apartment was not clean.

{¶ 13} As part of his duties, Fulton was responsible for maintaining the swimming pool at the Lexington Village apartment complex and was advised by Price that the pool was to be ready to open for the 2008 Memorial Day weekend. The pool was not ready by Memorial Day, however. It opened on June 6, 2008, even though there was a problem with the pool pump. Several days later, when Price learned of the pump problem, the pool was closed. As of June 27, 2008, the pool was still not ready to be opened.

{¶ 14} On June 27, 2008, MBA Realty discharged Fulton due to his poor work performance.

IV

{¶ 15} Fulton raises two assignments of error, both of which challenge the commission's finding that he was discharged for just cause. He first argues that his discharge was without just cause because MBA Realty did not follow its progressive discipline process before terminating his employment. Fulton contends that an employer's failure to follow its progressive discipline policy before terminating an employee renders the employee's discharge without cause for unemployment purposes. See, e.g., *Interstate Brands Corp. v. Cogar* (June 13, 1985), Cuyahoga App. No. 48704; *In re Claim of Frazee* (Dec. 13, 1984), Franklin App. No. 84AP-284. He asserts that

MBA Realty failed to follow its progressive discipline policy before terminating him and, therefore, his termination was without just cause.

{¶ 16} But MBA Realty did not have a progressive discipline policy. The employee handbook, which prohibited such conduct as neglect of duty, insubordination, poor job performance, and refusal to follow the instructions of the employee's supervisor or management, made clear that Fulton's employment was at-will. It stated:

{¶ 17} "Any infraction of these rules of personal conduct is considered grounds for corrective and disciplinary action, ranging from verbal warning, written warning, suspension or immediate termination of employment, depending on the seriousness of the offense and at the Company's sole discretion. However, nothing in this section shall be construed to require levels of progressive discipline or to alter an employee's employment status from 'at-will' employment."

{¶ 18} Fulton acknowledged in writing that he had received the employee handbook. The acknowledgement specifically stated that "either the Company or I may terminate the employment relationship with or without cause at any time."

{¶ 19} Hence, Fulton's assertion that his discharge was without just cause because MBA Realty failed to follow its progressive discipline policy before terminating him is without merit. Furthermore, even if there had been a progressive discipline policy, the record reflects that Fulton received two written warnings prior to his discharge.

{¶ 20} Fulton next contends that the commission made erroneous factual findings in concluding that he was terminated for just cause. Fulton argues that the hearing

officer's conclusion that he had neglected to do his job because the pool was not open for the 2008 Memorial Day weekend was erroneous because he did not authorize the pool to be opened, and management knew that the pool pump was not operating properly and the pool could not be opened.

{¶ 21} But whether Fulton authorized the opening of the pool in June 2008, or whether management knew of the problem with the pump before that time, are not dispositive of whether Fulton neglected his job duties. As the hearing officer concluded, "the swimming pool was supposed to be ready for the 2008 Memorial Day weekend and it was not. If [Fulton] was not able to personally repair the pool pump, he should have diligently worked on getting an appropriate contractor to repair it. Weeks later, the swimming pool was still not ready to be used." Fulton neglected his job duties by not ensuring that the pool was ready to be opened for the Memorial Day weekend, as instructed.

{¶ 22} Fulton next "vehemently denies" that he authorized any overtime. But any argument about overtime is irrelevant; it was not mentioned in Fulton's termination notice and not referenced in the commission's decision.

{¶ 23} Last, Fulton argues that his discharge was without just cause because even if his alleged acts of misconduct were unacceptable under the employee handbook, they were not so serious as to warrant discharge, and MBA Realty should have issued a verbal or written warning instead of discharging him. But as the employee handbook made clear, it was within MBA Realty's "sole discretion" to terminate Fulton's employment for

his repeated faulty job performance, instead of giving him a verbal or written warning, or suspending him.

{¶ 24} The evidence in the record supports the commission's conclusion that Fulton was terminated through his own fault, i.e., for just cause, and is therefore ineligible for unemployment compensation. The commission's decision was neither unreasonable, unlawful, nor against the manifest weight of the evidence. Accordingly, Fulton's assignments of error are overruled and the decision of the trial court is affirmed.

Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
JAMES J. SWEENEY, J., CONCUR