[Cite as *Bellaire v. Ohio Unemp. Comp. Rev. Comm.*, 2011-Ohio-5167.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| VILLAGE OF BELLAIRE, | ) | |
| | ) | CASE NO.    11 BE 3 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| STATE OF OHIO UNEMPLOYMENT | ) | |
| COMPENSATION REVIEW | ) | |
| COMMISSION, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:	Civil Appeal from Common Pleas Court,
Case No. 09CV91.

JUDGMENT:	Affirmed.

APPEARANCES:
For Plaintiff-Appellant:	Attorney Edward Sustersic
894 National Road
Bridgeport, Ohio  43912

For Defendants-Appellees:	Attorney Michael DeWine
Attorney General
Attorney Patria Hoskins
Assistant Attorney General
Health and Human Services Section
30 East Broad Street, 26th Floor
Columbus, Ohio  43215-3400

Attorney Frank Duff
32 20th Street
Wheeling, West Virginia  26003

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: September 26, 2011

VUKOVICH, J.

¶{1}   Appellant Village of Bellaire appeals the decision of the Belmont County Common Pleas Court affirming the decision of the State of Ohio Unemployment Review Commission which allowed appellee Michael Bumgardner unemployment benefits.

¶{2}   The Village of Bellaire contends that the Hearing Officer from the Ohio Unemployment Review Commission found that there was some fault on the part of Bumgardner and thus, its decision that there was no just cause for his termination is unlawful.  It also asserts that the decision is unreasonable because the evidence does not support a finding of no just cause.  Bumgardner and appellee Ohio Department of Job and Family Services (ODJS) disagree with the Village's position by contending that the termination was not justifiable.

¶{3}   For the reasons expressed more fully below, we hold that the Hearing Officer did not find that the employee's conduct constituted "fault" for purposes of a just cause termination.  Likewise, as there was some competent evidence to support the Hearing Officer's decision, the decision is not against the manifest weight of the evidence.  Therefore, the judgment of the trial court is hereby affirmed.

STATEMENT OF CASE

¶{4}   Bumgardner was employed by the Village of Bellaire from September 1986 until July 9, 2008.  Prior to September 2005, he held the position of heavy equipment operator.  At that point he was promoted to service director.  In January 2008, he was demoted back to heavy equipment operator.  On July 9, 2008 he received a letter from Village Administrator Rebecca George Zwack indicating that his employment with the Village was terminated.  That letter specifically stated:

¶{5}   "Subsequent to your demotion in January of this year, you have routinely been absent from work.  As heavy equipment operator an essential job function is to serve as lead worker over the water crew and while serving in this capacity several

water jobs have not been completed and many have posed a serious health and/or safety risk to residents."

¶{6}    Following his termination, he appealed the termination through the means provided in the Village's Employee Handbook.  He also filed an Application for Determination of Benefit Rights with Appellee Ohio Department of Job and Family Services (ODJFS).  ODJFS determined that he was terminated without just cause and allowed him unemployment benefits.   The Village appealed the decision and the director for the Office of Unemployment Compensation affirmed the decision.   The Village asked for a redetermination and the director affirmed the decision again.

¶{7}    The Village of Bellaire then appealed the decision to the Unemployment Compensation Review Commission for review by a hearing officer.  A hearing was held at which testimony and evidence were taken, which included alleged problems with Bumgardner's work performance as service director.  The core of the testimony, however, concerned three specific water projects that occurred after his demotion to heavy equipment operator – Maple Avenue Project, Indian Run Project and Belmont Community Hospital Project.

¶{8}    Testimony indicated that the Maple Avenue Project required installation of new sewer lines and a ditch was left open for about a month.  The Village believed it should have been completed in two weeks.  The Indian Run Project was to locate sewer lines so that sewer taps could be installed.  The Village was of the opinion that the job should have taken one day instead of three days.  The Village Administrator and the Mayor filled in the ditch so that it would not be left open all weekend; employees did not stay overtime to fill in the ditch after the line was fixed.  The Bellaire Community Hospital Project involved a leaking water line and the ditch was left open for around three weeks.  On none of these jobs was he the acting foreman and testimony indicated that some of the delays caused in three projects were because they were waiting on parts and being called off the job to complete other jobs.

¶{9}    Following the hearing, the Hearing Officer concluded that there was no just cause for the termination.  It reasoned:

¶{10} "In the instant case, the employer discharged claimant due to a combination of poor job performance and attendance.   The evidence presented

establishes that claimant was disciplined in January 2008 for poor job performance as a Service Director. Claimant's punishment was demotion to a Heavy Equipment Operator. Following the demotion, the employer determined that claimant's involvement in three specific work orders and his excessive absenteeism warranted discharge. The evidence presented indicates that claimant was one of several crew members who worked under the direction of rotating service directors on each of the job assignments in question. The evidence further shows that claimant missed work due to circumstances beyond his control. A lesser form of discipline for claimant's failure to adequately perform his duties on the job assignments would have been appropriate in this case. After a review of the entire record in this matter, the Hearing Officer finds that there was not sufficient fault or misconduct on the part of claimant that rose to the level of a justifiable discharge. It will be held that claimant was discharged by the Village of Bellaire without just cause in connection with work."

¶{11} The Village of Bellaire appealed that decision to the Review Commission. The request for review was disallowed. The Village then appealed that decision to the Belmont County Common Pleas Court. Following briefing, the common pleas court affirmed the decision of the Hearing Officer. The court concluded that the administrative decision was not contrary to law or irrational. It provided the following reasoning:

¶{12} "The Hearing Officer acknowledged that the disputed work projects were projects executed in a less than satisfactory manner. However the Hearing Officer noted that the claimant's job on each of the projects was to run heavy equipment, and he was not the service director assigned managerial responsibility for that week. The Hearing Officer found because the claimant was only one of several crew members working under the direction of a rotating service director, the deficiencies in claimant's performance were insufficient to justify a termination. There is no evidence that the claimant's job allowed him to either complete the projects earlier or, without direct orders, close the ditches once opened.

¶{13} "The Hearing Officer limited review to the reasons given in the July 9, 2009 termination letter, a letter which was devoid of any reference to past problems. 'Where a party gives a reason for his conduct and decision touching any thing involved

in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle law.' *Grand Trunk Western. R. Co. v. J.W. Nelson Co.*, 116 F.2d 823, 840 (6th Cir. 1941). Because the termination letter cited only matters arising during the claimant's performance of his final job, the termination must be warranted when examined in light of those cited matters alone. The Hearing Officer's statement that lesser sanctions would have sufficed is not irrational or contrary to law."

ASSIGNMENT OF ERROR

¶{14} "THE TRIAL COURT ERRED IN AFFIRMING THE DECISION OF THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION WHERE THAT DECISION WAS UNLAWFUL, UNREASONABLE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

¶{15} R.C. 4141.282 provides the mechanism for appealing the decision of the Unemployment Compensation Review Commission to the common pleas court. The common pleas court must affirm the commission's decision unless it was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H). An appellate court applies the same standard on appeal; we can only reverse the Unemployment Compensation Board of Review's just cause determination if it is unlawful, unreasonable, or against the manifest weight of the evidence. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, paragraph one of the syllabus.

¶{16} The manifest weight of the evidence standard in a civil case is different from the manifest weight of the evidence standard that is applicable in a criminal case. *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, ¶26. In a civil case, a judgment will not be determined to be against the weight of the evidence if it is supported by "some competent, credible evidence going to all the essential elements of the case." Id., citing *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279.

¶{17} R.C. 4141.29(D)(2)(a) provides that an individual is ineligible for unemployment benefits if he was "discharged for just cause in connection with the individual's work."

**¶{18}** The Ohio Supreme Court has defined "just cause" as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17; *Tzangas,* supra, at 697. "Just cause determinations in the unemployment compensation context, however, also must be consistent with the legislative purpose underlying the Unemployment Compensation Act." *Tzangas*, supra, at 697. "The act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own." Id., quoting *Irvine,* supra, at 17. "When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection." Id. at 697-698. Ohio Supreme Court further explained:

**¶{19}** "While this court did hold in *Irvine* that '[t]he determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case,' * * *, that does not compel the appellate court's abandonment of fault-based just cause analysis in favor of a 'totality of the circumstances' examination. Instead, *Irvine* recognizes that the question of fault cannot be rigidly defined, but, rather, can only be evaluated upon consideration of the particular facts of each case. If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause." Id. at 698.

**¶{20}** The Hearing Officer stated in its decision that a lesser form of discipline would have been sufficient given the facts. The Village's position is that this is a determination of fault and therefore, it follows that there was just cause for the termination. The Village cites this court to the Ninth Appellate Court's decision in *Autozone, Inc. v. Herring*, 9th Dist. No. 22824, 2006-Ohio-1039 to support its position.

**¶{21}** In *Autozone*, the Hearing Officer based its decision of no just cause for termination on comparative fault; it compared one employee's conduct to that of another. Id. at ¶13. The Appellate Court indicated that Ohio precedent is clear that a just cause determination requires an analysis of the employee's fault in the situation leading to his termination. Id. at ¶15. It does not indicate that an employee is unjustly terminated simply because his misconduct is less egregious than another employee's.

Id. In *Autozone*, the appellate court did not hold that the employee was at fault; rather it remanded the matter for a determination of whether there was fault.

¶{22} In the case sub judice, the Hearing Officer did not compare Bumgardner's conduct to that of other employees. Rather, the Hearing Officer indicated that Bumgardner was not the supervisor and that his actions did not warrant termination. Thus, we find that *Autozone* is not on point.

¶{23} Furthermore, we disagree with the Village that the Hearing Officer's determination was a finding of fault. Fault, in the context of unemployment compensation, is fact specific. Here, the Director of the Office for Unemployment Compensation, the Hearing Officer, the Unemployment Compensation Review Commission and the Belmont County Common Pleas Court could not find that Bumgardner's termination was with just cause. Accordingly, by implication they did not find that the Village had been reasonable in finding "fault" on Bumgardner's part.

¶{24} We now to turn to the issue of whether such a determination is against the manifest weight of the evidence.

¶{25} The Hearing Officer only considered actions that occurred after the demotion to heavy equipment operator in determining whether there was just cause for the termination. The common pleas court found no error with that determination. As aforementioned, the termination letter only refers to his work after the demotion as justification for his termination. If the Village had relied on his performance while he was service director as a reason for his termination, it should have stated as much in the termination letter. Thus, for the reasons stated in the common pleas court's decision, we find that the Hearing Officer was not unreasonable to limiting the determination of just cause to actions that occurred after the demotion. Therefore, our review is limited to whether those actions would justify the termination.

¶{26} Starting with job performance, while employed as heavy equipment operator ditches were left open longer than the Village wanted them to be. It is also true that the job description of heavy equipment operator states under the essential functions that the heavy equipment operator "may act as lead worker over crews." However, the testimony at the hearing clearly established that Bumgardner did not act as the foreman on any of the three work projects that were not completed satisfactorily

to the Village. Rather, he was one of several crew members working under the direction of a rotating service director. Furthermore, he was given no written warnings or oral reprimands about his job performance for the Indian Run Project, Maple Avenue Project or the Bellaire Community Hospital Project. The Village Administrator did not indicate that she ever reprimanded him on his job performance for these projects or that he was ever told how long each project should take. Rather, testimony indicated that some of the delays on those jobs were not within his control. For instance, he was called off of the Indian Run Project twice by the acting service director to perform other jobs. (12/17/08 Tr. 40). On the Maple Avenue Project, the delay was in part caused because they were waiting on parts. (11/13/08 Tr. 13). Moreover, he testified that the acting service director would instruct the employees when to leave and when to arrive on a job site. (12/17/08 Tr. 62-63). While the Village Administrator indicated that there was nothing to prevent employees from working overtime to complete a project, considering that there were foremen in charge of the projects it would seem that the foreman would be in charge of directing the employees to stay over. At the hearing, two of the foremen testified. One foreman, Delbert Jackson, indicated that while he had no authority to discipline Bumgardner, he could have reported him to the Village Administrator if he had a problem with him. However, he testified that he did not have a problem with Bumgardner nor his work. (12/17/09 Tr. 85-87). The other foreman, Timothy Moore, testified that he was not dissatisfied with Bumgardner's performance, but it did take him a long time to perform jobs. (12/17/08 Tr. 92).

¶{27} Given the testimony, considering that he was not in charge of the projects and there were no warnings given to him about his job performance, the record supports the Hearing Officer's determination that Bumgarnder's job performance did not constitute just cause for his termination and was not against the manifest weight of the evidence. As the common pleas court noted, "there is no evidence that the claimant's job allowed him to either complete the projects earlier or, without direct orders, close the ditches once opened." Thus, the Hearing Officer's decision was not unreasonable.

¶{28} The second and final reason given for his termination was absenteeism. The Village Administrator testified that for a three and a half month period he used 118 hours of sick time. She testified that he took one or two days off per week. She indicated it was usually a Thursday and Friday, but sometimes a Tuesday. (11/13/08 Tr. 35). In the appellate brief, the Village asserts that there is a pattern to the sick days of Tuesdays and Thursdays.

¶{29} The testimony clearly establishes that Bumgardner had accumulated sick time to use. In fact, when he was terminated he still had 350 hours of unused sick time. (11/13/08 Tr. 50-51). Bumgardner further testified that he was suffering from anxiety attacks for which he was being treated. (12/17/08 Tr. 60). However, Bumgardner did not submit an approval form for the sick leave used.

¶{30} The employee handbook was discussed at the hearing. In that handbook it discusses approval for leave. It states, "You must submit request for absences other than sick leave, two days prior to the first day you will be absent." (12/17/08 Tr. 9). The Village Administrator testified that for sick time, the approval form had to be filled out after the fact. (12/17/08 Tr. 10). The employee handbook also states that "if any employee fails to report to work for a work day or leave work prior to the scheduled quitting time, without approval from an immediate supervisor, the employee will not receive payment of the time reported as personal or sick after the fact." (12/17/08 Tr. 16).

¶{31} Bumgardner testified that he attempted to fill out the approval forms but the acting service director was out of the forms and he was told that the acting service director would get the form to him when they were restocked. The forms were never given to Bumgardner. However, Bumgardner did fill out time sheets and those sheets were signed by the supervisor. (12/17/08 Tr. 16). Thus, Bumgardner was paid for the sick time that he used. (12/17/08 Tr. 12-13).

¶{32} When the testimony as to the sick days is reviewed as a whole, the Hearing Officer's conclusion that absenteeism would not justify termination was not against the manifest weight of the evidence. Bumgardner was paid for the sick time he used. This is an implicit indication that the time was approved, and thus, the Hearing Officer's decision was not unreasonable.

¶{33} In conclusion, this assignment of error lacks merit. The Hearing Officer did not find Bumgardner's conduct to constitute fault for purposes of a just cause termination. There was some competent credible evidence to support such a conclusion. Thus, the Hearing Officer's decision was not against the manifest weight of the evidence.

¶{34} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
Waite, P.J., concurs.