[Cite as *Chardon Local School Dist. v. Keller*, 2014-Ohio-5623.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| CHARDON LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, | : | **O P I N I O N** |
| | : | |
| Appellee, | : | **CASE NO. 2013-G-3159** |
| | : | |
| - vs - | : | |
| | : | |
| MICHAEL KELLER, ADMINISTRATOR OF THE ESTATE OF PERRY T. YOWELL, DECEASED, | : | |
| | : | |
| Appellant. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 12 A 001109.

Judgment: Affirmed.

*Eric J. Johnson*, *Susan Keating Anderson*, and *Mark S. Fusco*, Walter & Haverfield, LLP, The Tower at Erieview, 1301 East Ninth St., Suite 3500, Cleveland, OH 44114 (For Appellee).

*Charles W. Oldfield* and *Ira J. Mirkin*, Green, Haines & Sgambati Co., L.P.A., 100 Federal Plaza East, Suite 800, Youngstown, OH 44503 (For Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Michael Keller, administrator of the Estate of Perry T. Yowell, appeals the judgment of the Geauga County Court of Common Pleas.[1] In its decision, the trial court reversed the decision of the Unemployment Compensation Review Commission ("the

---

1. While the appeal was pending, Yowell passed away. This court, therefore, granted the motion to substitute Michael Keller, Administrator of the Estate of Perry T. Yowell, Deceased, as appellant for Perry T. Yowell.

Commission"), which affirmed the decision of the Hearing Officer. In its decision, the Hearing Officer had determined Yowell was entitled to unemployment compensation because his employer, Appellee Chardon Local School District Board of Education ("the Board"), terminated him without just cause.

{¶2} Yowell was employed as a maintenance worker at the Chardon Local School District. On the morning of February 27, 2012, a shooting occurred at Chardon High School; three students died, and three others were injured. Yowell was called to the crime scene because of a water leak. While at the scene, Yowell, without permission, took a photograph of the bloody aftermath on his cellular telephone. Yowell displayed this photograph to community members, co-workers, and a student. This picture depicted evidence of blood and brain matter from the victims that resulted from the tragic shooting.

{¶3} Upon learning of the existence of this photo, the Chardon Police Department inquired of Yowell. Yowell was also interviewed by an Assistant Geauga County Prosecutor. He indicated that he had shown this photograph to two of his co-workers. This statement was confirmed in Yowell's written statement. Additionally, two individuals gave written statements to the prosecutor's office noting that the picture depicted two pools of blood on the floor of the cafeteria; one of the statements indicated that Yowell informed her there was also brain matter on the cafeteria table.

{¶4} When the superintendent was notified, he conducted an investigation. The superintendent noted that Yowell did not disclose that he had shown the photograph to the co-workers or other district employees. Yowell also informed the

superintendent that the picture was low resolution and it just looked like "black spots" on the floor.

{¶5}    Yowell was placed on suspension during this investigation.  Following a pre-disciplinary hearing, the matter was considered by the Board.  The Board voted to terminate Yowell's employment.  The Board's "Resolution of Termination" stated that Yowell had engaged in misconduct by photographing the crime scene for improper purposes.  It further stated that Yowell had engaged in misconduct by showing the picture to other staff members, a student, and community members.  The Resolution stated that Yowell had been dishonest and had violated Board Policy.

{¶6}    Yowell filed an application for determination of benefit rights with Ohio Department of Job and Family Services ("ODJFS"); the Director issued an initial determination that Yowell was discharged from his employment with just cause and disallowed his unemployment benefits.

{¶7}    Yowell filed an appeal from this initial determination.  The Director issued a redetermination affirming its prior determination.    Yowell appealed this redetermination, and the case was transferred to the Commission.  A hearing was held.

{¶8}    The Hearing Officer for the Commission, in his decision, reversed the Director's redetermination which had disallowed Yowell's application for unemployment benefits.    In reversing this decision, the Hearing Officer observed that Yowell's photograph taken at the scene of the tragic incident "showed a lack of respect for the shooting victims and their families.  [Yowell] used poor judgment in deciding to take the picture without obtaining permission."    The Hearing Officer noted, however, that the employer had no particular rule concerning photographing the school cafeteria, and "by

3

merely taking a picture and showing it to others, he did not engage in any particular act of misconduct." The Hearing Officer further reasoned that Yowell did not publish the picture nor did any of the family members of the victims become aware of his actions. He stated, "[t]he totality of the record before the Hearing Officer does not establish that there was sufficient fault or misconduct attributable to the claimant to disqualify him from receiving unemployment compensation benefits."

{¶9} On September 12, 2012, appellee initiated a Request for Review by the Commission. The Commission granted that request on September 26, 2012. After review of the entire record, on October 10, 2012, the Commission concluded that the Hearing Officer's decision should be affirmed.

{¶10} Appellee filed an administrative appeal, pursuant to R.C. 4141.282(H). After briefing by the parties, the trial court reversed the decision of the Commission. In its judgment entry, the trial court found the following:

> This Court does, however, find that the discharge was with just cause. Not because [Yowell] was dishonest or because he attained the last step on the disciplinary scale.
>
> The reason this court finds that [Yowell] was at fault was because of his outrageous and egregious conduct.
>
> The hearing officer found that [Yowell's] photographing of the crime scene was 'insensitive * * * it showed a lack of respect for shooting victims and their families. The claimant used poor judgment in deciding to take the picture without obtaining permission. Further, he demonstrated a lack of tact by showing it to other individuals.'
>
> The foregoing conclusion reached by the hearing officer is not reasonable. To characterize what [Yowell] did in this case as exercising poor judgment, as insensitive, or not being tactful, is grossly disproportionate.
>
> The employer need not have any particular rule concerning photographing the school cafeteria in order for an employee to be

4

discharged with just cause for photographing the aftermath of the incident that occurred here. * * * [Yowell] here went beyond the line of insensitivity or lack of tact. [Yowell's] conduct was profoundly troubling. The photograph is inherently gruesome. It shocks the sensibilities of any reasonable person.

{¶11} Yowell filed an appeal with this court. On appeal, Yowell asserts the following:

{¶12} "The trial court erred when it reversed the decision of the Unemployment Compensation Review Commission."

{¶13} Appellee filed a cross-assignment of error pursuant to App.R. 3(C)(2). A cross-assignment of error may be filed pursuant to that rule or R.C. 2505.22 when a party wishes to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court, while not seeking to change the judgment or order. *See* 2013 Staff Note, App.R. 3(C)(2). In its cross-assignment of error, appellee asserts the following:

{¶14} "The lower court erred by ignoring undisputed, relevant evidence of prior misconduct and progressive discipline."

{¶15} Before we address Yowell's assigned error, we note that appellee argues this court does not have jurisdiction to entertain Yowell's appeal. Appellee, in both a motion to dismiss and its appellate brief, maintains that this appeal should be dismissed because a claim for unemployment benefits does not survive the death of the claimant. In our March 26, 2014 judgment entry, this court distinguished *Hodge v. Ohio Bur. of Emp. Serv.*, 6th Dist. Lucas No. L-083-016, 1983 Ohio App. LEXIS 12415, whereby the Sixth Appellate District held that an action to recover unemployment compensation is grounded on a "personal right," which is non-transferable.

5

**{¶16}** In our judgment entry, we noted that Yowell filed this appeal prior to his death. This appeal seeks a reversal of the trial court's judgment, which would preclude the ODJFS from seeking repayment of the benefits from Yowell's estate that were received during his lifetime. No new or additional benefits are being sought. Finding we have jurisdiction to entertain the instant appeal, we proceed to address the merits of Yowell's assigned error.

**{¶17}** A reviewing court may reverse a "just cause" determination by the Commission "only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694 (1995), paragraph one of the syllabus. An appellate court's obligation is to consider whether the decision is based upon evidence in the record, without substituting its judgment regarding witness credibility for those of the commission. *Id.* at 696. Thus, "[t]he fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. * * * 'Where the board might reasonably decide either way, the courts have no authority to upset the board's decision.'" *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 18 (1985), quoting *Charles Livingston & Sons, Inc. v. Constance*, 115 Ohio App. 437, 438 (7th Dist.1961).

**{¶18}** Essentially, the purpose of Ohio's Unemployment Compensation Act is "'to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.'" *Irvine*, *supra*, at 17, quoting *Leach v. Republic Steel Corp.*, 176 Ohio St. 221, 223 (1964).

6

The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.

*Tzangas, supra*, at 697-698.

{¶19} In order to qualify for unemployment compensation benefits, a claimant must satisfy the criteria set forth in R.C. 4141.29(D)(2)(a). That section provides: "[N]o individual may * * * be paid benefits * * * [f]or the duration of the individual's unemployment if the director finds that [t]he individual quit work without just cause or has been discharged for just cause in connection with the individual's work * * *." The Ohio Supreme Court has defined "just cause" as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine, supra*, at 17; *Tzangas, supra*, at 697.

{¶20} We turn to the gravamen of appellant's appeal—whether the trial court erred in reversing the Commission's decision granting unemployment benefits on the basis that Yowell was discharged without just cause. Appellant contends the Hearing Officer's finding that Yowell was not guilty of wrongdoing and that he was fired without just cause is supported by at least some competent, credible evidence. Appellant maintains the Hearing Officer's findings that Yowell neither violated any policies of the school as cited by the Board nor engaged in any misconduct are supported by competent, credible evidence.

{¶21} In its cross-assignment of error, appellee maintains that at the time Yowell took the photograph at issue, his prior misconduct had placed him at Step 5 of the

Progressive Discipline provision, which identifies termination of employment as an appropriate disciplinary measure. Appellee argues that the hearing officer and the trial court failed to take into consideration that Yowell had three prior instances of misconduct and that Yowell was aware any subsequent misconduct may lead to termination. The trial court concluded that Yowell was fired for just cause, but not because he was dishonest or because he attained the last step on the discipline scale.

{¶22} Where an employee demonstrates "'unreasonable disregard for [the] employer's best interests,'" just cause for the employee's termination is said to exist. *Kiikka v. Ohio Bur. of Emp. Servs.*, 21 Ohio App.3d 168, 169 (8th Dist.1985), quoting *Stephens v. Bd. of Rev.*, 8th Dist. Cuyahoga No. 41369, 1980 Ohio App. LEXIS 12234, *4.

> {¶23} While [the Ohio Supreme Court] did hold * * * that 'the determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case,' * * * that does not compel the appellate court's abandonment of fault-based just cause analysis in favor of a 'totality of the circumstances' examination. Instead, * * * the question of fault cannot be rigidly defined, but, rather, can only be evaluated upon consideration of the particular facts of each case. If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause. Fault on behalf of the employee remains an essential component of a just cause termination.

*Tzangas, supra*, at 698.

{¶24} The record demonstrates that Yowell had been disciplined for numerous instances of misconduct: (1) for being in possession of a district-owned piece of equipment at his personal residence; (2) for showing pornographic material to a minor who was working as seasonal help at the district; and (3) for "overt and excessive personal use of a Board owned computer." At the time of this incident, Yowell was at

8

the top level of discipline under a progressive discipline regime. The record demonstrates that Yowell was aware that under the progressive discipline steps, termination was a possibility. In fact, the letter to Yowell indicating the Board had adopted a resolution to terminate his employment relied upon his pattern of misconduct, including prior disciplinary infractions.

{¶25} In his decision, the Hearing Officer recognized that Yowell "had been given several previous warnings and a suspension." The Hearing Officer, however, noted that "because appellee had not established that Yowell was at fault in the final incident, the previous discipline [was] irrelevant to the determination as to the reason for separation." This conclusion is inherently inconsistent because the Hearing Officer also acknowledged that Yowell was directly responsible for his predicament. "Photographing the area in which the students were shot was insensitive. It showed a lack of respect for the shooting victims and their families. The claimant used poor judgment in deciding to take the picture without obtaining permission. Further, he demonstrated a lack of tact by showing it to other individuals."

{¶26} Further, it was not reasonable for the Hearing Officer to limit the just cause determination to this particular incident, as the Board's decision to terminate Yowell relied upon his prior disciplinary infractions, as evidenced by the termination letter. The trial court indicated in its ruling that Yowell's "previous discipline [was] not relevant as to the determination as to the reason given by the Board for separation of Appellee from his employment." Ostensibly, this is because the trial court found just cause for Yowell's termination without reference to his prior discipline. However, the prior discipline was additional support for the Board's decision to terminate Yowell and lends

9

weight to the decision in an examination of the totality of the circumstances. *See Village of Bellaire v. Unemp. Comp. Rev. Comm.*, 7th Dist. Belmont No. 11 BE 3, 2011-Ohio-5167, ¶25 (discussing whether the Hearing Officer was reasonable to limit the determination of just cause to actions that occurred prior to or after the employee's demotion). Therefore, the previous discipline was, to the extent indicated, relevant.

{¶27} Yowell demonstrated an unreasonable disregard for his employer's best interests. Yowell, whose only direction was to turn the water off in the cafeteria—the scene of the incident—used his position as a school employee to voluntarily go beyond the task at hand. Without permission, Yowell took a photograph depicting the bloody aftermath of a tragic school shooting; Yowell did not take the photograph to aid in the criminal investigation but for his own personal interest. In addition to taking the photograph, Yowell showed it to co-workers, community members, and even a student. Although the photograph itself is not contained in the record, the record does reflect numerous depictions of the photograph. This photograph showed the pools of blood of the students shot and killed during this tragedy—a tragedy that affected the Chardon community and those associated with the school district. In fact, when showing the picture to one co-worker, Yowell commented that the picture depicted "two pools of blood on the floor and * * * brain matter on the table."

{¶28} Yowell, not any outside economic factor, was responsible for his dismissal. Prior to taking this photograph, Yowell was aware that based on his instances of prior misconduct, termination was a possibility. Yet, Yowell proceeded to not only take a photograph of the scene, but he showed and described it to others. If Yowell had not taken the photograph and showed it to other individuals, he may not

have been terminated. Yowell was the "engine of his own termination." *City of Ashtabula v. Rivas*, 11th Dist. Ashtabula No. 2011-A-0020, 2012-Ohio-865, ¶24.

{¶29} The Hearing Officer noted that none of the victim's family members became aware of Yowell's actions; if they became aware of the photograph, then certainly "the district could suffer bad publicity and potential liability." The Hearing Officer stated that appellee was "unable to point to any particular harm that actually occurred because of [Yowell's] behavior" and "there is no evidence that his behavior had a detrimental effect on the employer." However, there is not a requirement of harm when considering whether an employee's actions demonstrated an unreasonable disregard for his employer's best interests. *See Bonanno v. Ohio Dept. of Job & Family Serv.*, 5th Dist. Tuscarawas No. 2012 AP 02 0011, 2012-Ohio-5167, ¶23 (noting that an employee's failure to comply with safety rules showed an "'unreasonable disregard' for his employer's best interests and subjected his employer to *potential* legal liability") (emphasis added).

{¶30} Upon a review of the record, we conclude that there was not competent, credible evidence presented from which the Commission could have reasonably determined that Yowell was terminated without just cause. The decision of the trial court, reversing the decision of the Commission, was not unlawful, unreasonable, or against the manifest weight of the evidence. It is our determination that the Court of Common Pleas did not err in reversing the Commission's Decision.

{¶31} Appellant's assignment of error is without merit.

{¶32} Appellee's cross-assignment of error is with merit to the extent indicated.

11

{¶33} For the reasons discussed above, the judgment of the Geauga County Court of Common Pleas is hereby affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶34} The majority holds that there was not competent, credible evidence presented from which the Review Commission could have reasonably determined that Yowell, now deceased, was terminated without just cause. The majority contends that the decision of the trial court, reversing the decision of the Review Commission, was not unlawful, unreasonable, or against the manifest weight of the evidence. The majority determines that the trial court did not err in reversing the Review Commission's decision. Because I disagree with the majority's position, I respectfully dissent.

{¶35} This case involves an administrative appeal. R.C. 4141.282, "Appeal to court," provides in part:

{¶36} "(H) REVIEW BY THE COURT OF COMMON PLEAS

{¶37} "The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."

12

**{¶38}** R.C. Chapter 4141 does not distinguish between the scope of review of a common pleas court and that of an appellate court with respect to Review Commission decisions. Additionally, the Supreme Court of Ohio has confirmed that "there is no distinction between the scope of review of common pleas and appellate courts regarding 'just cause' determinations under the unemployment compensation law." *Durgan v. Ohio Bur. of Emp. Servs.*, 110 Ohio App.3d 545, 551 (9th Dist.1996), citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696-697 (1995). This Court is required to focus on the decision of the Review Commission, rather than that of the common pleas court, in such cases. *Barilla v. Ohio Dept. of Job & Family Servs.*, 9th Dist. Lorain No. 02CA008012, 2002-Ohio-5425, ¶6, citing *Tenny v. Oberlin College*, 9th Dist. Lorain No. 00CA007661, 2000 Ohio App. LEXIS 6169, *5 (Dec. 27, 2000).

**{¶39}** The investigation into just cause is a factual inquiry. *Irvine v. Unemployment Comp. Bd. of Review*, 19 Ohio St.3d 15, 17 (1985). This court is not to make factual findings or determine the credibility of the witnesses. *Id.* at 18. Rather, this court and all reviewing courts from the first level of review through the final appeal share a duty to determine whether the Review Commission's decision is supported by some competent, credible evidence. *Id.*; *Tzangas*, *supra,* at 696. The fact that reasonable minds might reach different conclusions is not a basis for reversing the Review Commission's decision. *Irvine, supra,* at 18.

**{¶40}** In this case, Yowell, a maintenance repairman for the School Board, was terminated because he used his cell phone, in this digital age in which we live, to take a low resolution picture of the cafeteria following the February 2012 Chardon High School

shooting. Yowell took the photo after the victims had been removed from the cafeteria. The photo was described as showing a black spot on the floor. Yowell showed the photo to his nephew and a few others. However, Yowell never printed, published, or circulated the picture.

{¶41} Yowell was never told that he could not take any pictures in the cafeteria. Nothing in the record indicates the photo provided any personal or identifying information as to any student. The picture was taken from outside the crime scene area and from behind the police tape marking the crime scene. The photo, when displayed on Yowell's cell phone, was about one and a quarter inches by two inches. There is no evidence that the photo was shocking or gruesome. In fact, the photo was never introduced into evidence and is not in the record.

{¶42} Although Yowell was fired for his actions, another employee who also had taken a photo was not. That employee had taken a picture from a short distance and at a high resolution of a spent bullet he found at the crime scene. That employee showed Yowell and others the photo he had taken. The School Board neither disciplined nor fired that employee. This writer is both puzzled and disturbed by the School Board's disparate treatment involving these two employees.

{¶43} The School Board based its decision to fire Yowell on the grounds that he violated policy (regarding the confidentiality of student information) and that he was dishonest. This writer stresses, however, that there is no evidence in the record that Yowell disclosed any confidential student information. As stated, no students were in the picture and nothing identifiable to any particular student was contained in the photo. Yowell did not violate any particular work rule, policy, or engage in any misconduct.

14

Also, there was no evidence that the photo, which was never published, caused any harm to the school district or to any student.

{¶44} Because Yowell was terminated, he filed an application for unemployment benefits. However, his application was disallowed. Yowell appealed and a hearing was held before a hearing officer. After hearing all the evidence, the hearing officer determined the School Board lacked just cause to terminate Yowell. The School Board filed a request for review claiming that the hearing officer imposed the wrong standard. However, the hearing officer correctly articulated the applicable just cause standard as, "fault or misconduct attributable to the claimant."

{¶45} After reviewing the entire record, the Review Commission affirmed the hearing officer's decision. Nevertheless, the School Board appealed to the trial court, essentially asking it to disregard the Review Commission's factual determination and make its own factual determination. Without even looking at the photo, the trial court second-guessed the hearing officer and reversed the Review Commission's decision. Yowell filed a timely appeal to this court, where the majority holds the trial court committed no error.

{¶46} This writer agrees with appellant that competent, credible evidence supports the Review Commission's decision. The hearing officer found Yowell was not guilty of any wrongdoing. The hearing officer also found that Yowell was fired without just cause. The trial court went well beyond its limited role by disregarding the Review Commission's factual determinations and substituting its judgment for that of the Review Commission. The trial court determined the photograph was inherently gruesome and that it shocks the sensibilities of any reasonable person. However, the court made that

15

factual determination without ever seeing the photograph *because it is not in the record*!

Not only do the facts not show the violation of any policy, the trial court wrongfully substituted its judgment for that of the Review Commission.

{¶47} For the foregoing reasons, I respectfully dissent.