[Cite as *Maiorca-Notman v. Dir. Job & Family Servs.*, 2016-Ohio-4599.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STEPHANIE A. MAIORCA-NOTMAN, | : | **O P I N I O N** |
| Appellee, | : | |
| - vs - | : | **CASE NO. 2015-T-0122** |
| DIRECTOR OF JOB AND FAMILY | : | |
| SERVICES, et al., | | |
| | : | |
| Appellant. | : | |
| | : | |

Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CV 01071.

Judgment: Affirmed.

*Michael D. Rossi,* Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH  44482 (For Appellee).

*Mike DeWine,* Ohio Attorney General, State Office Tower, 30 East Broad Street, 16th Floor, Columbus, OH  43215-3428, and *Susan M. Sheffield,* Associate Assistant Attorney General, 20 West Federal Street, Third Floor, Youngstown, OH  44503. (For Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1}  Appellant, Director of Job and Family Services, appeals the judgment of the Trumbull County Court of Common Pleas reversing the decision of the Ohio Unemployment Compensation Review Commission, which denied unemployment compensation benefits to appellee, Stephanie A. Maiorca-Notman.  At issue is whether

the trial court's decision was unlawful, unreasonable, or against the manifest weight of the evidence. For the reasons that follow, we affirm.

{¶2} The statement of facts that follows is based on the evidence presented at the hearing before the hearing officer. Miranda Commons, Chief Financial Officer of Akeso Home Health Care, Inc. ("the employer"), testified that Stephanie A. Maiorca-Notman ("the claimant") was employed by Akeso as a registered nurse. Ms. Commons said that on December 30, 2014, during Akeso's monthly interdisciplinary meeting with its nurses and therapists, physical therapist Jeff Jay said he was concerned about whether one of their patients was safe at home and receiving proper care. The patient was in her 80s; had recently been released from the hospital; was taking several medications; was living alone; and had a few falls in her home. He said she was left home alone for hours at a time and was unable to stand without assistance. He felt that she should have in-home nursing care and that, if they could not resolve the matter, they might have to contact Adult Protective Services. As a result, Ms. Commons said the claimant was asked to talk to the patient's daughter about having nursing come to the home.

{¶3} Rebecca Hughes, Akeso's Director of Nursing, testified that, based on Mr. Jay's concerns, she asked the claimant to go to the patient's home to conduct a nursing assessment and to talk to the patient's daughter about in-home nursing for her mother. Ms. Hughes instructed the claimant to do this because she had done the initial work with the patient and because the claimant personally knew the patient's daughter.

{¶4} The claimant was not represented by counsel. Instead, her testimony was elicited through questioning by the Commission's hearing officer. Rather than have the

2

claimant recite the events as they unfolded as generally happens on direct examination, at times his questions to her were specific or accusatory, more nearly resembling cross examination. At other times, his questions were completely open-ended without any direction. Thus, the claimant's testimony is sometimes unclear and contains several gaps. That being said, the claimant testified that, later that day, December 30, 2014, pursuant to the employer's instructions, she called the patient's daughter. The claimant told her that Mr. Jay was concerned about her mother's condition and said she might need in-home nursing care. The patient's daughter said it was not necessary because the patient's doctor had told her he did not believe her mother needed in-home nursing. The patient's daughter asked the claimant what possible repercussions might occur if she declined nursing care for her mother. The claimant said that, according to Mr. Jay, they might have to call Adult Protective Services.

{¶5} The claimant testified it was appropriate for her to advise the patient's daughter, who was her mother's authorized contact, about the possible need for in-home nursing because such care would be a change in the patient's plan of care and, according to federal regulations, the patient has the right to be informed in advance about any changes in her plan of care. The claimant also testified that if a referral to Adult Protective Services is necessary, the agency can tell the patient about a possible referral to give the patient the opportunity to make the changes necessary to avoid a referral.

{¶6} Ms. Commons testified that after talking to the claimant, the patient's daughter became very upset and irate. She then called Mr. Jay. The patient's daughter told him her mother did not need nursing care. She was upset about him saying her

3

mother was not safe at home and that Adult Protective Services might be needed. She said if he called that agency, she would sue the company.

{¶7} Ms. Commons said that during the week following December 30, 2014, the claimant was off work due to a medically-excused illness. Ms. Commons had Ms. Hughes call the claimant at home to tell her to come into the office. On January 5, 2015, Ms. Hughes told her she was terminated for violating the company's confidentiality policy by telling the patient's daughter about Mr. Jay's concern about her mother's safety and that they might have to call Adult Protective Services. The reason provided for her termination in her notice of discharge was that she violated "organization confidentiality by disclosing to a patient's family member items that were discussed about the patient in a closed meeting." During the hearing before the hearing officer, Ms. Commons testified she discharged the claimant due to her alleged violation of the company's confidentiality policy.

{¶8} The claimant testified that, according to the company's confidentiality policy, the company's employees cannot disclose information about the company's patients, company pricing, agency administration, company projects, investigations of the agency, and agency personnel. She said she did not disclose any such information and thus did not violate the company's policy. Moreover, the claimant testified she was not given any specifics as to what she could or could not discuss with the patient's daughter.

{¶9} The claimant filed an application with Job and Family Services for determination of unemployment compensation benefits beginning January 11, 2015.

4

{¶10} On February 4, 2015, Job and Family Services disallowed the claimant's application for unemployment compensation. On March 10, 2015, appellant affirmed the disallowance of the claimant's application, finding she was terminated by the employer for just cause.

{¶11} On March 25, 2015, the claimant appealed the decision. Job and Family Services transferred the case to the Unemployment Compensation Review Commission. On April 23, 2015, a hearing was held before the hearing officer. Following the hearing, he found that the claimant did not violate the company's confidentiality policy, but nevertheless found she was discharged for just cause because her actions were in "willful disregard of the employer's interest." As a result, the hearing officer affirmed appellant's March 10, 2015 disallowance of the claimant's application for unemployment compensation.

{¶12} The claimant filed a request to review the hearing officer's decision with the Review Commission, and the Commission disallowed the request.

{¶13} The claimant filed an administrative appeal with the trial court pursuant to R.C. 4141.282. On review of the record, the trial court reversed the Review Commission's decision, finding it was unlawful, unreasonable, and/or against the manifest weight of the evidence. Appellant appeals the trial court's judgment, asserting the following for his sole assignment of error:

{¶14} "The Review Commission's decision is not unlawful, unreasonable, or against the manifest weight of the evidence and is supported by the evidence of record, and therefore this court must reverse the common pleas court's decision."

5

{¶15} As this court has previously recognized, the Supreme Court of Ohio has held that the standard of review in unemployment compensation appeals of just cause decisions issued by the Review Commission is the same for an appellate court as it is for the common pleas court. *Kovacic v. Higbee Dept. Stores*, 11th Dist. Lake No. 2004-L-150, 2005-Ohio-5872, ¶13, citing *Tzangas, Plakas & Mannos v. Ohio Bur. Of Emp. Services*, 73 Ohio St.3d 694, 696 (1995). That is, "[a]n appellate court may reverse the Unemployment Compensation Board of Review's 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Id.* at paragraph one of the syllabus; *see also* R.C. 4141.282(H). The Supreme Court of Ohio recently reaffirmed its opinion regarding this standard of review in *Williams v. Ohio Dep't of Job & Family Servs.,* 129 Ohio St.3d 332, 2011-Ohio-2897, ¶20.

{¶16} "Under the foregoing standard, reviewing courts are not permitted to make factual findings or determine the credibility of witnesses, which are instead reserved for decision by the Review Commission. *Irvine v. Unemployment Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17 (1985). The decision of the Review Commission may not be reversed simply because reasonable minds might reach different conclusions from the same evidence. *Tzangas, supra,* at 697, citing *Irvine* at 18." *Kovacic* at ¶14. Rather, reviewing courts are required to determine whether the commission's decision is supported by evidence in the record. *Tzangas, supra,* at 696.

{¶17} Pursuant to R.C. 4141.29(D)(2)(a), an individual is not eligible for unemployment compensation benefits if the individual has been "discharged for just cause in connection with the individual's work." "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason

for doing or not doing a particular act." *Irvine, supra.* In determining the existence of just cause to discharge, the employee's "conduct need not constitute misconduct, but there must be a showing of some fault on the part of the employee." *Reddick v. Sheet Metal Prods. Co.,* 11th Dist. Lake No. 2009-L-092, 2010-Ohio-1160, ¶22. "'If an employer has been reasonable in finding fault on behalf of an employee, the employer may terminate the employee with just cause. Fault on behalf of the employee remains an essential component of a just cause termination.'" *Id.*, quoting *Tzangas, supra,* at 698.

**{¶18}** Appellant argues the trial court erred in finding that just cause for the claimant's termination must be warranted by the reason stated in the notice of termination alone and that the hearing officer improperly changed the reason for the claimant's termination from the employer's stated reason (a violation of the confidentiality policy) to another reason (willful disregard of the employer's interest).

**{¶19}** The facts in this case are quite similar to those presented in a case decided by the Seventh District. In *Bellaire v. State Unemployment Comp. Review Comm'n*, 7th Dist. Belmont No. 11 BE 3, 2011-Ohio-5167, the employer-village discharged the claimant, a heavy equipment operator, via a letter in which the employer cited issues related to the claimant's performance of his final construction project as the reason for his discharge. However, during the administrative hearing, the employer cited problems in the employee's performance in two other projects as well. The hearing officer found there was no just cause for discharge and granted the employee's request for unemployment compensation. The trial court concluded that the administrative decision was not contrary to law or irrational. In affirming the decision of the trial court, the Seventh District stated:

7

**{¶20}** "The Hearing Officer limited review to the reasons given in the July 9, 2009 termination letter, a letter which was devoid of any reference to past problems. 'Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, *after litigation has begun*, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by * * * settled principle[s of] law.' *Grand Trunk Western. R. Co. v. H.W. Nelson Co.*, 116 F.2d 823, 840 (6th Cir.1941). *Because the termination letter cited only matters arising during the claimant's performance of his final job, the termination must be warranted when examined in light of those cited matters alone.*" (Emphasis added.) *Id.* at ¶13.

**{¶21}** Significantly, while the trial court relied heavily on *Bellaire, supra,* and *Grand Trunk Western, supra,* appellant does not attempt to distinguish or even mention these cases.

**{¶22}** Here, the only reason provided by the employer in its notice of termination was that the claimant allegedly violated the company's confidentiality policy by discussing with the patient's daughter the therapist's concern for her mother's safety and the fact that Adult Protective Services might be called. The employer never cited the purported reason found by the hearing officer in support of his decision, i.e., that the claimant's actions were in willful disregard of the employer's interest. Because the termination notice cited only the claimant's alleged violation of the company's confidentiality policy in support of her termination, the discharge could only be justified in light of the reason advanced by the employer. Once the hearing officer decided that the claimant did not violate the company's confidentiality policy, the employer (and the hearing officer) were estopped from asserting another reason to support a finding of just cause.

8

{¶23} Appellant argues the hearing officer did not change the employer's reason for the claimant's termination, but, rather, merely analyzed the claimant's conduct under the standard of willful disregard of the employer's interest. However, the hearing officer did change the employer's reason for the discharge because the hearing officer's finding of willful disregard was based on conduct of the claimant that was different from that which supported the claimant's alleged violation of the confidentiality policy. Appellant argued at oral argument that the hearing officer's finding of willful disregard was based on the claimant's telephoning the patient's daughter and threatening to call Adult Protective Services, instead of going to the patient's home to conduct a nursing assessment. This conduct has nothing to do with the claimant's alleged violation of the confidentiality policy and thus could not be used to support the hearing officer's finding of willful disregard.

{¶24} It is worth noting that, even if appellant could rely on this different conduct, the record does not support appellant's version of events. First, nothing in the record suggests the claimant called the patient's daughter *in lieu of* making an assessment at the patient's home. Rather, the claimant telephoned the patient's daughter to discuss the physical therapist's concerns for the patient's safety and her need for in-home nursing care, just as her employer instructed her to do. Further, the record does not support appellant's argument that the claimant threatened to call Adult Protective Services. Rather, the patient's daughter asked the claimant a direct question about the possible repercussions of her declining nursing care. In response, the claimant simply said that Adult Protective Services might be called. Moreover, after the daughter emphatically told both the claimant and the physical therapist that her mother did not

9

need in-home nursing, any further attempt by the claimant to conduct a nursing assessment would have been futile and counter-productive.

**{¶25}** In any event, even if the hearing officer was entitled to find another reason to support the employer's decision to discharge the claimant, the hearing officer did not reference any evidence in his decision supporting his finding of willful disregard of the employer's interest; the record does not support such finding; and appellant cites no case law holding that facts similar to those presented here support such finding.

**{¶26}** Appellant's reliance on *Chardon Local School District Board of Education v. Keller*, *Admr. of the Estate of Perry T. Yowell, Deceased*, 11th Dist. Geauga No. 2013-G-3159, 2014-Ohio-5623, to support the hearing officer's finding of willful disregard is misplaced. In fact, not only does *Yowell* not support this finding, *Yowell* actually supports the trial court's reversal of the hearing officer's decision. In *Yowell*, the employee was a janitor at Chardon High School. Following the tragic shooting of several students at the school, Yowell was called to attend to a maintenance problem in the cafeteria, where the crimes had taken place. Based on certain actions taken by Yowell at that time, he was discharged, but his request for unemployment compensation benefits was granted by the hearing officer and affirmed by the Review Commission. The trial court reversed, denying the benefits. On appeal, this court affirmed, stating:

> **{¶27}** Yowell demonstrated an unreasonable disregard for his employer's best interests. Yowell, whose only direction was to turn the water off in the cafeteria—the scene of the incident—used his position as a school employee to *voluntarily go beyond the task at hand. Without permission*, Yowell took a photograph depicting the bloody aftermath of a tragic school shooting; Yowell did not take the photograph to aid in the criminal investigation but *for his own personal interest*. In addition to taking the photograph, Yowell showed it to co-workers, community members, and even a student. * * * This photograph showed the pools of blood of the students

10

shot and killed during this tragedy—a tragedy that affected the Chardon community and those associated with the school district." (Emphasis added.) *Id.* at ¶27.

{¶28} Thus, in *Yowell*, the finding of willful disregard of the employer's interest was based on the employee's exceeding his authority and engaging in outrageous conduct for his own personal interests. In an effort to apply *Yowell* here, appellant argues that the claimant's authority was limited to conducting "a nursing assessment, period," and that she had no authority to reveal to the daughter anything that was discussed at the company meeting. However, that is not accurate. Both Ms. Commons, the employer's Chief Financial Officer, and Ms. Hughes, the employer's Director of Nursing, testified at the hearing that the claimant was instructed to conduct a nursing assessment and to talk to the patient's daughter about the need to have nurses come to the patient's home. Ms. Commons said the claimant was instructed to have this conversation with the patient's daughter and to perform the assessment because she had done the initial work with the patient and personally knew the patient's daughter. When the daughter asked the claimant about the likely repercussions of her declining in-home nursing care, the claimant correctly told her that Mr. Jay said that Adult Protective Services might be called.

{¶29} Unlike *Yowell*, the claimant's conduct here was clearly within the scope of her authority. She was instructed to discuss the patient's condition with her mother, including the need for in-home nursing care. Moreover, the claimant's discussion with the patient's daughter was performed for the benefit of the employer and the patient, not for any personal interests of the claimant. Further, as the claimant testified, the patient had the right to be informed in advance of the need for in-home nursing care and the

11

agency could refer the matter to Adult Protective Services if the patient's daughter did not agree to such care. Also, there was no evidence that the claimant's conduct was willful. Thus, there was no evidence that the claimant's actions were in willful disregard of the employer's interest. Further, by instructing the claimant to speak with the patient's daughter without providing her with any specific parameters for the discussion, the blame for any unintended lapse fell on the employer, not the claimant.

{¶30} Appellant argues that, even if the hearing officer improperly changed the employer's reason for the claimant's termination, it is well settled that where a judgment is correct, *a reviewing court* is not authorized to reverse the judgment merely because erroneous reasons were given by the trial court. While an *appellate court* can assert different reasons to affirm a judgment that is otherwise correct, *Geneva v. Fende*, 11th Dist. Ashtabula No. 2009-A-0023, 2009-Ohio-6380, ¶33, this principle does not apply here because the hearing officer was not acting as an appellate court. Rather, since his decision (as upheld by the Commission) is the subject of this appeal, the hearing officer was acting as a trial court. As such, he was not permitted to reference a reason for the claimant's discharge other than the reason stated by the employer. *Bellaire, supra.*

{¶31} Upon review of the record, there was no competent, credible evidence presented from which the Review Commission could have reasonably determined the claimant was terminated for just cause. Thus, the decision of the trial court, reversing the Commission's decision, was not unlawful, unreasonable, or against the manifest weight of the evidence.

12

{¶32} For the reasons stated in this opinion, the assignment of error is overruled. It is the order and judgment of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.